(No. 17705.—

THE ILLINOIS COMMERCE COMMISSION *ex rel.* The Lumaghi Coal Company, Appellant, *vs.* THE CHICAGO AND EASTERN ILLINOIS RAILWAY COMPANY *et al.* Appellees.

*Opinion filed October 25, 1928—Rehearing denied Dec. 5, 1928.*

Charles E. Heckler, for appellant.

K. L. Richmond, and E. W. Rawlins, (Homer T. Dick, of counsel,) for appellees.

Mr. Commissioner Crow reported this opinion:

This cause comes by appeal from a judgment of the circuit court of Cook county reversing an order of the Illinois Commerce Commission in favor of the appellant, requiring a reduction in freight rates to Chicago on coal shipped from the appellant's mines at Collinsville.

The Lumaghi Coal Company, the appellant, is a corporation owning and operating coal mines located at Collins-

ville, a station on the line of the Pennsylvania Railroad Company eleven miles east of East St. Louis. In December, 1922, the appellant filed a complaint with the Commerce Commission against the Pennsylvania Railroad Company, the Chicago and Eastern Illinois Railway Company, and other railway companies operating railroad lines within the Chicago switching district. The complaint alleged, in substance, that the freight rate charged by the railway companies for the transportation of coal from Collinsville to Chicago and points in the Chicago switching district was $1.85 per ton; that the rate published and charged by the carriers for the transportation of coal from other mines located near the mines of the Lumaghi company was only $1.65 per ton; that the mines which enjoyed the rate of $1.65 per ton were in all respects situated similarly to appellant from a transportation standpoint and were competitors in the Chicago market; that by reason of the failure of the appellee carriers to accord to the appellant the same freight rate that was accorded to its competitors it was placed at a substantial and undue disadvantage in the sale of its coal in the Chicago market; that the freight rate of $1.85 per ton charged for transportation of coal from the mines of the appellant to the Chicago market was excessive, unjust, unreasonable, unjustly discriminatory and prejudicial to the appellant and in violation of the Public Utilities act. The appellant prayed that an order be made by the commission commanding the appellees to establish and put in force for such transportation a freight rate that would be reasonable and free from unjust discrimination.

The freight rates published by the railroads for transporting coal into Chicago are applicable for delivery at any point within the Chicago switching district. With respect to coal transported from the mines of the appellant, the Pennsylvania Company and the Chicago and Eastern Illinois Company are what are known as "line haul carriers." Coal shipped from the appellant's mines at Collinsville moves

over the line of the Pennsylvania Company to St. Elmo, a junction point of that company and the Chicago and Eastern Illinois Company, and thence over its lines to Chicago, where it is delivered by it to the railroad on whose lines within the Chicago switching district the plant or yards of the consignee may be located. The freight rate charged is a joint rate and includes all charges for the transportation of coal from Collinsville to its final destination within the switching district. For that reason all the railroads transporting coal within the Chicago switching district were made parties defendant to the complaint, although the Pennsylvania Company and the Chicago and Eastern Illinois Company are the principal parties in interest, so far as the appellant's mines are concerned.

All the appellees filed answers. The Chicago and Alton Railroad Company and the Wabash Railway Company (not parties defendant to the complaint) filed intervening petitions. The Illinois Coal Traffic Bureau and the Central Illinois Coal Traffic Bureau, both organizations of coal producers and shippers, also intervened on the ground of interest in the matter in controversy. The commission made its order on April 4, 1923, finding, in effect, that the allegations of the complaint had been sustained, and that the rate of $1.85 from appellant's mines was excessive, unreasonable and discriminatory, and it ordered the appellees to publish and charge a rate of $1.65 for the transportation of coal from the appellant's mines to points in the Chicago switching district. A petition for a rehearing filed on behalf of some of the appellees was denied on June 9, 1923, and the rate of $1.65 fixed in the order was put into effect and has been in effect since that time.

The Chicago and Eastern Illinois Company, the Cleveland, Cincinnati, Chicago and St. Louis Company, the Chicago and Alton Company and the receiver of the Wabash Company served notice of appeal from the order of the

commission to the circuit court of Cook county, and the record was filed in that court on June 28, 1923. The Pennsylvania Company was not a party to the appeal. On the hearings before the commission that company, through its traffic officers, admitted that the freight rate on coal from the mines of the appellant to Chicago is unreasonable as compared with the rate from other mines in the same neighborhood similarly situated and is discriminatory; that those traffic officers stated that so far as the Pennsylvania Company was concerned, it was then, and for a long time had been, willing that the commission should make an order reducing the rate to $1.65; that for a long time previous to the filing of the complaint the officials of the Pennsylvania Company had been of the opinion that the appellant was entitled to a freight rate of $1.65 for the transportation of coal to Chicago and the Chicago switching district in order to put it on an equality, in the matter of freight rates to Chicago, with other mines located in the same neighborhood, and that it had only refrained from putting the $1.65 rate into effect because other carriers interested in the coal rates would not agree to it.

The cause was heard on appeal in the circuit court on the record of the commission in April, 1926, and on May 3, 1926, the circuit court entered an order that the order of the commission should be vacated and set aside and the rate of $1.85 restored until otherwise determined by a proper hearing within the powers of the commission. The appellant thereupon moved the court to strike from the order the concluding words of the order, "and the rate of $1.85 restored until otherwise determined by a proper hearing within the powers of the commission." The motion was overruled. The appellant prayed and was granted an appeal to this court. Error is assigned on the action of the circuit court in setting aside the order of the commission and in entering that part of the judgment which directs that the rate of $1.85 be restored.

248

The questions presented for review lie in a narrow compass. The commission is an administrative body created by the legislature for the purpose, among others, of determining the question of rates that may be charged by carriers for services they render, including the reasonableness of the rates charged for carriage. Those questions are not judicial. The judicial department of government possesses well defined powers over the decisions of the commission, of which it cannot be deprived by legislative action. To deny the right of judicial review would be to deprive the parties to the controversy of their rights without due process of law. While the right of review cannot be taken away, its limits have been as well defined as they can be described in general terms. In *Commerce Com.* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 309 Ill. 165, we said: "Where the facts are controverted and the decision depends upon credit to be given contradictory testimony the courts will give great weight to the finding of the commission, which is qualified by experience and special study to weigh the facts and circumstances applicable to cases within its jurisdiction. (*Keller* v. *Industrial Com.* 302 Ill. 610.) It is the duty of the courts to weigh and consider the evidence, and if it is found that the order of the commission is without substantial foundation in the evidence it should be set aside. On the other hand, it is not intended that the courts should assume the duties of the commission and try anew matters within its jurisdiction, and if from any reasonable view of the evidence the commission's order rests on a reasonable and substantial basis and does not infringe any of the constitutional rights of the parties it should be sustained."

The right to review the findings of the Commerce Commission in a proceeding such as this is limited to the questions whether the commission acted within the scope of its authority, whether the finding is without any reasonable foundation in the evidence, or whether a constitutional right

has been infringed by such finding. (*Chicago, Milwaukee and St. Paul Railway Co.* v. *Public Utilities Com.* 268 Ill. 49; *Interstate Commerce Com.* v. *Union Pacific Railroad Co.* 222 U. S. 541.) Orders of the commission are entitled to great weight and can be set aside only if arbitrary or unreasonable or in clear violation of a rule of law. Courts should review or interfere with them only so far as necessary to keep them within their jurisdiction and protect constitutional rights. (*People* v. *McCall,* 219 N. Y. 84.) The law does not authorize the court to put itself in the place of the commission, try the question anew and substitute its judgment for that of the commission. The court should not usurp legislative or administrative functions by setting aside a legislative or administrative order on its own conception of the wisdom of it. (*State* v. *Great Northern Railway Co.* 130 Minn. 57.) The courts will not interfere with an order of the commission when it does not appear from the record that the order is unlawful or unreasonable. (*Settle* v. *Public Utilities Com.* 94 Ohio St. 417; *Wabash, Chester and Western Railroad Co.* v. *Commerce Com.* 309 Ill. 412.) The statute makes the commission's findings of fact *prima facie* true, and its orders and decisions are not to be set aside unless clearly against the manifest weight of the evidence. It is not sufficient to justify a reversal of a reasonable order of the commission, made in the lawful exercise of its powers, that a court of review is of the opinion that the order was unwise or inexpedient. To reverse and set aside an order on the ground that it is unreasonable it must be an arbitrary action, not resting on a reasonable basis for the exercise of the discretionary powers of the commission. (*Public Utilities Com.* v. *Chicago, Milwaukee and St. Paul Railway Co.* 287 Ill. 412.) Where it is found that the order of the commission is without substantial foundation in the evidence it is the duty of the court to set it aside. *Choate* v. *Commerce Com.* 309 Ill. 248.

250

Tested by the canons regulating judicial power in cases of the sort now before us, the judgment of the circuit court was erroneous. The court, exercising a special statutory jurisdiction, had no authority to order that the former rate of $1.85 be restored after setting aside the order fixing the rate at $1.65. One purpose of creating the commission was to take from the carrier, as an interested party, the power to fix rates where those upon whom they were imposed had no relief against extortion or discrimination. The law was made to protect those served as well as those who serve.

There was a general consensus of opinion among traffic agents for the Chicago and Eastern Illinois Company, the Pennsylvania Company and an official of the Chicago and Alton Company that the rate from appellant's mines was relatively too high. There was dissent from that opinion, but the commission was charged with the duty of determining the fact. No one expressed the opinion that the rate was *per se* too high. All testified that the group system cannot be maintained and have a group rate reasonable *per se* for all the mines in the group. The evidence shows that the product of the appellant's mines is of the same general quality as that of other mines in the immediate vicinity enjoying the favored rate. Nothing is shown in the situation of its mines to the lines of the carriers justifying a greater rate than that accorded to the other mines. The Chicago market, as shown by the evidence, is the best market for the coal from the appellant's mines. The appellant has a capacity for large production, and the evidence shows that its coal will have a ready sale in the Chicago market if permitted to ship to that market at the rate accorded to competing mines enjoying the favored rate. In normal conditions it can have no market there under the present rate. No one denies that statement. In view of the manner in which the coal prices are regulated it is clear that must be true.

The real controversy, and the principal basis for opposition to the change of rate asked by the appellant, is the effect it will have on the established system of group rates for shippers. With commendable frankness the witnesses for the appellees emphasize the fairness of the rate fixed by the commission. Some of the traffic officials resisting the rate had used language in conversation with officials of the appellant practically conceding the justice of its demand. Those conversations were quoted at the hearing. They were not denied. One of the officials making the admissions in substance expressed the opinion the admissions should not be quoted as evidence against the road he represented, although not admitting he had used the language attributed to him. He admitted, however, there is nothing private in the public business of the adjustment of freight rates.

With reference to the application of the group system of rates, the assistant freight traffic manager for the Pennsylvania Company testified that in making the coal rate to Chicago the greatest consideration had been the matter of giving shippers similarly situated an opportunity to compete in a given market. He further said he thought that distance originally had something to do with the fixing of any rate to Chicago but did not know that distance, alone, was compelling in fixing the so-called boundaries of the Springfield group, and that from the appearance of the map distance did not have much to do with fixing the group. He expressed the opinion that the Springfield group was only partially logical. Since the group was fixed, conditions have changed to an extent that would warrant the road to say that the rate now prevailing from Canteen and Collinsville to Chicago is "somewhat high on the basis of relativity— not *per se.*" Taking the group arrangement as a whole, there must be some rates that are unreasonable *per se* and others that are reasonable. It is manifest that the system of grouping that fixes for one member of the group a rate that is so much greater than that accorded to another not

materially different in its situation must operate as a discrimination against the former, whether intended or not.

An argument pressed against the lower rate asked by appellant is, that if it be accorded a lower rate those mines in the northern portion of the group to which they belong will demand a lower rate and those south of Collinsville will demand that they be taken into the Springfield group. The question is an administrative one, with which the courts primarily have nothing to do. Whether the group system of making rates is good, bad or indifferent is not a legal question. But it is not easily understood how a rate of $1.85 to Chicago is a fair and proper rate for the appellant's mines when another mine only three miles nearer the market, not materially different in situation, is accorded a rate of $1.65 to the same market. So the argument is pressed that a general disturbance of rates will result if the rate now in question is permitted. Whether the group system of rate-making is right is not presented. The commission is charged with the duty of adjusting rates when complaint is made. Its decisions are subject to review by this court. The only question before us in this case is whether its decision has any reasonable support in the record. (*Wabash, Chester and Western Railroad Co.* v. *Commerce Com. supra.*) We are of the opinion that it has.

The judgment of the circuit court is reversed and the cause is remanded to that court, with directions to enter a judgment approving the order of the commission.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Crow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Reversed and remanded, with directions.*