(No. 25511.—)

JAMES S. REID, Appellee, *vs.* F. LYNDEN SMITH, Director of Public Works and Buildings, *et al.* Appellants.

*Opinion filed October 11, 1940—Rehearing denied Dec. 18, 1940.*

JOHN E. CASSIDY, Attorney General, (W. F. GRAY, of counsel,) for appellants.

GEORGE E. DRACH, and LOWELL D. RYAN, for appellee.

148

Mr. Justice Gunn delivered the opinion of the court:

The circuit court of Sangamon county, on the complaint of James S. Reid, held invalid the ac of July 26, 1939, entitled "An act regulating wages of aborers, mechanics and other workmen employed under contracts for public works," which became a law without the approval of the Governor. The court permanently enjoined the Director of Public Works and Buildings, the Auditor of Public Accounts and the State Treasurer from awarding a certain contract or from paying any money from the State treasury upon the performance of it. The issue was made by motion to strike and dismiss the complaint, which was overruled by the court, and, upon appellants electing to abide by their motion, a permanent injunction was issued against letting and awarding the said contract in compliance with the provisions of said law. The constitutionality of the act is involved.

The act in question, (Laws of 1939, page 568,) commonly called the Prevailing Wage law, provides that not less than the prevailing wage *per diem,* prevalent in the locality in which the work is to be performed shall be paid laborers, workmen and mechanics employed by or on behalf of the State, or on behalf of any county, city and county, city, town, township, district or other political subdivision of the State in the construction of public works; that the public body awarding such contract shall ascertain the prevailing wage in the locality and shall specify it in the call for bids, and it shall thereupon become mandatory upon the contractor to whom the contract is awarded to pay not less than the specified wage and so provide in his contract with the public body, and that the generally prevailing wage shall be the rate determined upon by the public body awarding the contract, whose decision on this matter shall be final. The law provides for a penalty of $10 per day for each laborer not receiving such wage, payable to the political body awarding such contract, and authorizes

such penalties to be deducted from the contract price. There are other provisions relating to administrative matters unnecessary to determination of the issues involved herein.

The complaint alleges plaintiff was a resident of Illinois and had paid the motor fuel tax in accordance with the law; that part of such taxes had been apportioned to the Department of Public Works and Buildings, and that the latter was about to award a contract for the construction of a highway in Sangamon county, Illinois, and that the Director of Public Works and Buildings, in accordance with the act, had specified the prevailing wage to be paid and intended to award said contract and have the cost thereof paid from the motor fuel funds, in accordance with the provisions of said act, which are set out in full in the complaint; that said statute is unconstitutional, and that the prevailing wage ascertained and specified by the Director of Public Works and Buildings is from thirty cents to seventy-five cents per hour higher than workmen can reasonably be obtained to do the same work in the locality. The circuit court enjoined the enforcement of the law as being unconstitutional, without pointing out specific reasons.

One question presented in the present case is whether the State has the right to prescribe by law the payment of a wage—even though generally prevailing in the locality of the improvement—to be paid in the construction of public work, which is more than the contractor doing the work would pay if not required by law to put such prescribed wage into effect. If the law has such an effect may a taxpayer bring suit to enjoin officers of the State from enforcing it?

We have uniformly held that a taxpayer may maintain a suit in equity to enjoin the misappropriation or waste of public money. In *Jones* v. *O'Connell,* 266 Ill. 443, this court said: "If taxpayers have a right or interest which the bill in this case was intended to protect it is of a purely equitable nature, the legal right and title being in the State.

150

\* \* \* This court has always recognized ·hat rule and has uniformly held that the taxpayers are i 1 equity the owners of the property of a municipality, a 1d whenever public officials threaten to pay out public fun .s for a purpose unauthorized by law or misappropriate such funds, equity will assume jurisdiction to prevent the 1nauthorized act or to redress the wrong, and this is beca 1se the right and interest are equitable in their nature and a ·e not recognized by courts of law. *Colton* v. *Hanchett*, 13 Ill. 615; *Perry* v. *Kinnear*, 42 id. 160; *Beauchamp* ·. *Kankakee County*, 45 id. 274; *Stevens* v. *St. Mary's Tra·ning School*, 144 id. 336; *Littler* v. *Jayne*, 124 id. 123; *Adai 1s* v. *Brenan*, 177 id. 194."

In *Fergus* v. *Russel*, 270 Ill. 304, and *Greenfield* v. *Russel*, 292 id. 392, the same principle was 1 ollowed and applied to restrain the State Treasurer from p; ying certain illegal appropriations made by the legislature. In that case the proposition was advanced that no power exi ted to interfere with the legislative or executive branch of the government in so far as the acts complained of are a part of the sovereignty of the State, but was definitely rej :cted by the court. The plaintiff as a taxpayer had a right to maintain this suit.

Appellants argue there is no limitation c n the right and power of the State to prescribe conditions under which it will make and execute contracts involving f ublic works in which the State, or other agencies of th( State, are interested; that in accordance with such rigl t the State has fixed upon the generally prevailing wage ; s the minimum that may be paid in performing such a contract. Appellee claims the law is unconstitutional be :ause it deprives the taxpayer of the benefit to be deriv( d from the right of the employer and employee engage l in public work to freely contract on the question of wage; and hours of work, and because the act delegates to certe in administrative officers the arbitrary right to fix wag 2s, without

having any standards or rules set out in the law to guide or to restrain their discretion.

It must first be noted that the act does not, in itself, fix a definite wage, but provides that it be ascertained and fixed by the public body awarding the contract as representing respectively the State or each subdivision of the State. The question arises whether such officials may be delegated the power to fix wages. In *People* v. *Federal Surety Co.* 336 Ill. 472, this court said: "The rule stated in Sutherland on Statutory Construction, section 68, is as follows: 'The true distinction is between a delegation of power to make the law, which involves a discretion as to what the law shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done; to the latter no objection can be made.' " If the discretion rests wholly with such officials it is an unconstitutional delegation of power. *People* v. *Federal Surety Co. supra.; Moy* v. *City of Chicago,* 309 Ill. 242; *People* v. *Belcastro,* 356 id. 144; *Winter* v. *Barrett,* 352 id. 441; *Schireson* v. *Walsh,* 354 id. 40; *Boshuizen* v. *Thompson and Taylor Co.* 360 id. 160; *City of Chicago* v. *Matthies,* 320 id. 352.

Section 1 of the act in question requires laborers, workmen and mechanics to be paid "not less than the general prevailing rate *per diem* wages for work of a similar character in the locality;" section 2 that the "public body * * * shall ascertain the general prevailing rate *per diem* wages in the locality," etc. Section 4 defines the prevailing wage as "the rate determined upon as such rate by the public body awarding the contract or authorizing the work." No hearing is required to be had of such public body, and no means are specified by which the prevailing wage is to be ascertained, and no time or place of meeting, or any meeting is required of such body.

The use of the term prevailing wage assumes that in each community there is a uniform, well-established scale

of wages paid workmen, laborers and mechanics, whereas as a matter of common knowledge the amount paid for given employments in most communities is neither uniform nor constant, depending upon varying local conditions. In commenting upon this term this court said, in *Mayhew* v. *Nelson*, 346 Ill. 331: "The difficulty of ascertaining the meaning of the phrase, 'the prevailing rate of wages' is apparent. Whether it means the rate which the most skillful, the average, the least capable or the most numerous group command, the act does not disclose." And further it was said: "The act not only prescribes no test or standard by which the prevailing rates of wages in a particular jurisdiction may be ascertained, but when an improvement extending from one subdivision of the State or municipality into or through another or dividing them is contemplated, no guide is offered by which the applicable rate or rates of wages may be determined."

The present law in declaring "the term 'general prevailing rate *per diem* wages' shall be the rate determined upon as such rate by the public body awarding the contract or authorizing the work" neither defines the term, nor furnishes a standard for ascertaining a wage.

The provision of section 2 of the act authorizing forfeitures or penalties to be retained and withheld from the contract price by the awarding body or the Department of Labor and power to render decisions in that regard, confers judicial power upon such bodies contrary to article 3 of the constitution. (*Cleveland, Cincinnati, Chicago and St. Louis Railway Company* v. *People*, 212 Ill. 638; *People* v. *Mallary*, 195 id. 582.) The fact that an appeal is provided from the decision of the awarding body or Department of Labor in so declaring a forfeiture, does not justify one department of government exercising powers belonging to another. *People* v. *Beekman & Co.* 347 Ill. 92; *North* v. *Board of Education*, 313 id. 422.

Another ground urged by the appellee to invalidate the Prevailing Wage law is that it deprives the taxpayer of the

benefit that might accrue by the exercise of the right of contract between the employer and employee engaged in the construction of public work. The right of liberty guaranteed by section 1 of article 2 of the constitution includes the right to make contracts as well with reference to the amount and duration of labor to be performed as concerning any other local matter. (*People* v. *Chicago, Milwaukee and St. Paul Railway Co.* 306 Ill. 486.) The right to contract is both a liberty and a property right under the constitution. *Frazer* v. *Shelton,* 320 Ill. 253; *Frorer* v. *People,* 141 id. 171; *Braceville Coal Co.* v. *People,* 147 id. 66.

The law involved undoubtedly abridges the right of the contractor bidding on the construction work for the State or any subdivision of the State, but since it applies to all contractors and none is objecting, does the requirement of the law that the contractors adopt the prevailing wage fixed by the body awarding the contract so affect the expenditure of public money as to warrant interference by a taxpayer? Regardless of what the rule may be in other jurisdictions we have uniformly held that requirements which have the effect of materially increasing costs, or limiting those who might be employed in the construction of public works, are illegal. Thus, suits brought by taxpayers to enjoin a regulation made by a municipal corporation requiring the employment of union labor have been sustained. (*Adams* v. *Brenan, supra; Holden* v. *City of Alton,* 179 Ill. 318.) Judgments have always been entered in taxpayers' suits restraining requirement of a regulation demanding the use of the eight-hour day in performing work for a municipality. (*Ritchie* v. *People,* 155 Ill. 98; *Fiske* v. *People,* 188 id. 206; *McChesney* v. *People,* 200 id. 146; *Glover* v. *People,* 201 id. 545.) The judgment in each of these cases was predicated upon the proposition that the public was interested in the cost of public improvements and entitled to sue, even though the contractors whose rights of contract were abridged did not sue. In other words, if the attempted abridgement of contract affected the cost of public work, a

taxpayer could complain even though its ef'ect upon him was indirect.

In principle the above cases cannot be distinguished from the one before the court. If it is illegal to require an eight-hour day, where the parties are willing to contract differently, how can a requirement that a contractor pay eighty cents per hour for common labor when it can be procured for fifty cents per hour by contract be sustained? In *Adams* v. *Brenan, supra,* the court said: "The complainant, as a taxpayer, is a proper party to question the action of the board. The contract containing the illegal provision was entered into voluntarily by the contractor, in pursuance of his alternative propositions submitted to the board. There is injury to the taxpayer on account of the urlawful agreement, and he is not deprived of a remedy for his wrong because neither the contractor nor any excluded laborer has questioned the contract."

The claim of appellant of the unrestricted right of the State to prescribe the conditions under which a State will enter into a contract involving public works s based to a large extent upon the decisions of the Supreme Court of the United States and of the State of New York. They cite *Atkin* v. *Kansas,* 191 U. S. 207, 48 L. ed. 148, *Ellis* v. *United States,* 206 id. 246, 51 L. ed. 1047, and *Heim* v. *McCall,* 239 id. 175, 60 L. ed. 206, where such a power upon the part of the State was sustained, involving hours of labor and preference rights of citizens in en ployment on public works. The last case mentioned invo ved the law of New York, which we do not regard as controlling because, while the earlier decisions held such a law invalid, when later decisions upheld such a law there was in force a constitutional amendment in that State permitting such legislation. Other jurisdictions as well as Illinois have reached a different result. *Ex parte Kuback,* 35 Cal. 274, 24 Pac. 737; *Harlan* v. *Employers Ass'n,* 159 Atl. (Md.) 267; *Attorney General* v. *Detroit,* 225 Mich. 63 , 196 N. W.

391; *Frame* v. *Felix,* 167 Pa. 47, 31 Atl. 375; *Bohn* v. *Salt Lake City,* 8 Pac. (2) (Utah) 591; *Ritchie* v. *People, supra; McChesney* v. *People, supra; Fiske* v. *People, supra; Glover* v. *People, supra.*

There can be no question but what some jurisdictions have adopted a different rule than that in Illinois, and counsel, with force and earnestness, have urged that we distinguish if not depart from our prior holdings on this question. To uphold the appellants in their contention, even by noticing distinctions, which we do not believe exist, would invite a reconsideration of matters long established as settled law.

The decree of the circuit court of Sangamon county, in holding the act under consideration void, is affirmed.

*Decree affirmed.*

FARTHING and MURPHY, JJ., dissenting.

We cannot agree with the reasoning or conclusion reached in the majority opinion. The Prevailing Wage act was made to cover public works contracts entered into by or on behalf of the State, any county, city, town, township, district or other political subdivision of the State. Plaintiff's right to bring the action is based upon the allegation that he has paid taxes into the motor fuel tax fund and that the application of the Prevailing Wage act will bring about a misappropriation of such tax fund. The right a taxpayer has to enjoin the misappropriation of public funds arises from the equitable interest he has in the funds and his liability to replenish the public treasury for deficiency caused by such misappropriation. (*Fergus* v. *Russel,* 270 Ill. 304; *Jones* v. *O'Connell,* 266 id. 443.) The statute which authorizes the collection of motor fuel tax directs its apportionment, one-third to the Department of Public Works and Buildings, one-third to the counties and one-third to the several municipalities of the State. (Ill. Rev. Stat. 1939, chap. 120, par. 424.) After the tax has been

apportioned and allocated, it is available to the several counties and municipalities for the purposes stated in the act. Plaintiff's equitable ownership of the tax might be traceable to the fund held by the counties and municipalities in the State but that is not sufficient. Before he would have the right to invoke the aid of a court of equity to enjoin expenditures by the officials of a county or municipality, it must appear by allegation that there has been or is about to be an expenditure by the public officials of such county or municipality. The bridge in question is to be built by the State and the allegations of the complaint refer solely to that part of the tax which has been apportioned to the Department of Public Works and Buildings. Plaintiff's right to claim equitable relief is therefore limited to that part of the tax which was apportioned to the said department. It is well settled that the validity of a statute may not be invoked by one who is not affected by its invalidity. (*People* v. *James,* 328 Ill. 262; *People* v. *Diekmann,* 285 id. 97; *Brand* v. *Brand,* 252 id. 134.) Plaintiff's right to seek equitable aid therefore narrows the consideration of the validity of the Prevailing Wage act as it refers to the construction of public works in which the State, alone, is interested and in which the State, acting through some governmental agency, is to be one of the contracting parties.

The initial premise from which the constitutionality of a legislative enactment must be determined is that the legislature has the power to pass any law not expressly prohibited by the constitution. The legislature is not a creature of delegated authority and the constitution is but a limitation upon its general powers of legislation. No proposition is better settled than that the legislature possesses every power not delegated to some other department or to the Federal government and not denied to it by the Federal or State constitutions. *Gillespie* v. *Barrett,* 368 Ill. 612; *Fenske Bros. Inc.* v. *Upholsterers Union,* 358 id. 239; *Greenfield* v. *Russel,* 292 id. 392.

This court's functions are purely judicial and it is not concerned with the wisdom of a legislative act nor with the social or economic policy that underlies its enactment. Questions of policy are for the legislature, and if an act does not clearly violate some express prohibition of the constitution it should be upheld as being within the province of the legislature.

It is said the act confers upon the officials letting the contract the arbitrary power to fix wages without having any standards or rules set out in the law to guide them or restrain their discretion and that, therefore, the act is unconstitutional as delegating the legislative power to administrative officers.

The power to make laws is a sovereign power vested exclusively in the legislature. It cannot be delegated. (*Parks* v. *Libby-Owens-Ford Glass Co.* 360 Ill. 130; *People* v. *Gill,* 358 id. 261; *Welton* v. *Hamilton,* 344 id. 82.) However, before a court can properly hold a statute void as being an unconstitutional delegation of legislative power, it must clearly appear that the power delegated was purely legislative. The legislature possesses many powers which it may properly exercise through legislative enactment or which it may delegate to administrative agencies. The decisions of this court have sustained the exercise of such power in numerous cases. The constitution has never been regarded as denying to the legislature the resources of flexibility and practicability necessary to enable it to carry out its functions. It cannot delegate the exercise of its discretion as to what the law shall be, but it may delegate discretionary powers in connection with the administration of the law. (*Milstead* v. *Boone,* 301 Ill. 213; *Schireson* v. *Walsh,* 354 id. 40.) The doctrine is well established, and has been frequently reiterated by this court, that if a statute contains a complete declaration of the legislative will,—that is, if it establishes a sufficient and intelligible basic standard or sets out a definite and certain policy and

rule of action for the guidance of the administrative agency —the delegation of powers incidental to the practical administration of the law is not prohibited. (*People* v. *Sholem,* 294 Ill. 204.) It has been held that the legislature can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. *Block* v. *City of Chicago,* 239 Ill. 251; *Arms* v. *Ayer,* 192 id. 601.

The standard on which the Prevailing Wage act is premised is: "The general prevailing rate of *per diem* wages in the locality in which the work is to be performed for each craft or type of workman or mechanic needed." The majority opinion holds that the "general prevailing rate of *per diem* wages" is without existence in fact and is undefined by the act; that it does not furnish a standard for ascertaining such wage and that it is, therefore, an unconstitutional delegation of power. Common experience verifies the existence of a prevailing wage rate in each community for each craft or type of workman. An engineer, construction contractor or a public official charged with the duty of letting public contracts can readily determine the general prevailing rate of *per diem* wages in each locality. In the making of private contracts or in the letting of public contracts, the prevailing rate of wage for each craft or type of workman or mechanic forms the basis of every estimate of the cost of such construction work.

The Prevailing Wage act confers no authority to arbitrarily fix a wage. It is a declaration of policy by the legislature that the State shall pay not less than the wage which prevails in the community on its public work contracts. The prevailing wage is defined by the law and no power is given to the administrative body to determine what the law shall be. The discretion to be exercised by it is an administrative discretion to determine the fact as to what is the prevailing wage. There is neither a delegation of legislative nor judicial power in such enactment.

*City of Chicago* v. *Washingtonian Home,* 289 Ill. 206; *People* v. *Buskirk,* 279 id. 203.

In the majority opinion it is said the prevailing rate of *per diem* wages in a locality is without meaning in fact, and the act in question is compared with the act of 1931, which was held invalid in *Mayhew* v. *Nelson,* 346 Ill. 381. This court construed the act of 1931 in the *Mayhew case* as requiring the public body to fix a prevailing rate of wage based upon the skill of the individual laborer and it also held that no standard of skill was specified in the act. The 1939 act is distinguishable from the 1931 act in that the public body in the 1939 act is required to fix the rate for each craft or type of workman or mechanic needed in the execution of the contract. The public body determines the skill, experience and ability of the workmen who usually perform a certain type of labor and it is the skill, ability and experience of the group that forms the basis for the ascertainment of the prevailing rate of wage for that character of work. Such classification is in common use in all kinds of construction work and the standard and character of workmen in the various groups in any locality can be readily ascertained by any public body authorized to let contracts for public work.

It is claimed that the words "prevailing rate" are vague and indefinite, and that no standard is prescribed by which it can be ascertained. Webster's Dictionary defines the word "prevailing" as prevalent, most frequent, generally current, widespread. From this definition, it is apparent the prevailing rate is not necessarily the highest nor the lowest rate paid, but is the rate generally and most frequently paid for the particular type of work in the locality in which the construction work was to be performed. The geographical area from which the rate must be determined is prescribed by statute. The ascertainment of the prevailing rate of wage in such geographical area involves the determination of a question of fact which may be ascer-

tained in the exercise of discretion and judgment in the same way that public officials determine the market or worth of any item of property or labor which they are about to procure for such use without any such statute.

It is claimed that the act of 1939 is unconstitutional and void for the further reason "that it deprives the taxpayer of the benefit that might accrue by the exercise of the right of contract between the employer and employee engaged in the construction of public work." The discussion in the majority opinion on this point is based upon two unrelated premises, neither of which is well founded. The first proposition is that the act impairs the freedom of contract as guaranteed by the State and Federal constitutions. The act is a legislative regulation of a contract to be entered into with the State as one of the contracting parties. The argument advanced assails the right of the State as one who is having the work done to fix a minimum wage that shall be paid by the contractor to workmen and mechanics employed in the various types of construction work. No one could question the right of an individual to prescribe a minimum wage a contractor must pay the laborer employed upon his work and to require the contractor to bind himself to make such payment by express stipulation. It would seem elementary that if the individual had the right to make such requirements in a contract, the State, in the exercise of its inherent rights as a sovereign, would have the same power, subject only that it could not infringe upon the rights of the individual.

It is also suggested the statute restricts the contractor and laborer in their freedom to contract. No contractor has any right to demand that he be permitted to enter into a contract to work for the State. (*Atkins* v. *Kansas*, 191 U. S. 207, 48 L. ed. 148; *Heim* v. *McCall*, 239 id. 175.) The State, like an individual, proposes to make a contract for the construction of a public work, and prescribes the terms, including the minimum wages to be paid upon

which a contract will be made. The contractor is at liberty to accept or reject as he may elect. If he accepts, it is upon the terms the State has proposed. If he rejects, he has not been deprived of any constitutional right. The State has the power to prescribe the terms, including the power to fix a minimum wage rate, and the requirement in the statute that the contractor shall agree with the State to pay such wage rate is no greater limitation upon the power to contract than that the contractor shall use a certain make of material and certain kind of equipment. The laborer who seeks to be employed upon the construction work stands in the same relation to the work to be done and to the State as does the contractor. The plaintiff is not a contractor or laborer and is not entitled to raise a constitutional question that does not affect his interest. The act does not violate the contract clause of either the State or Federal constitutions.

The majority opinion considers the question as to whether the requirement of a law that the contractor adopt the prevailing wage fixed by the body awarding the contract so affects the spending of public money as to warrant an interference by a taxpayer. The holding is that any statutory requirements which have the effect of materially increasing the cost of public works are illegal. The cases relied upon do not support the proposition for which they are cited. The *Adams, Holden* and *Ritchie cases* were decided on constitutional principles different from those urged in this case. The *Fiske case* did not decide the point and the statement in the opinion that an eight-hour provision in the specifications in a public work contract to be let by a municipality is an unconstitutional infringement upon the freedom of contract between the employer and employee is mere *dictum*. The court had before it only the specification in the public contract while here we are considering a statute which declares a legislative policy. The *McChesney* and *Glover cases,* citing the *dictum* of the

*Fiske case,* are based upon the proposition that such requirements are against public policy, illegal and void because they tend to increase the cost of the work and make the bids less favorable to the public.

The distinction between those cases and the one at bar is self-evident. The courts, in the absence of statute, can make a finding as to public policy of the State and can declare contracts made in violation of such policy to be illegal and void but the declaration of public policy is primarily a function of the legislature. In the cases cited in the majority opinion and above referred to, there was a declaration of a public policy as determined by the court and not by legislative enactment. It is well settled that the finding of the court as to matters of public policy will stand only so long as it is not in conflict with the declared legislative policy. It is also within the province of the court, before legislative enactment, to hold that any provision of a public contract which would tend to increase the cost of the work to the taxpayer was against public policy, illegal and void, but when the legislature declared that it is the public policy of this State that the State, in letting its public contracts, shall require the payment of wages prevailing in the community and that the State shall not be a party to sub-standard wage cutting, this declaration of policy supersedes any finding of public policy previously made by the court. It might be inferred from the majority opinion that any requirement of a public contract which tends to increase the cost of work to the public is illegal and void but this court has held that a taxpayer has no constitutional or statutory right to require that the lowest bid be accepted in all cases or that the work be done as cheaply as possible. *McGovern* v. *City of Chicago,* 281 Ill. 264.

For the reasons stated, the reasoning adopted in the majority opinion, and the conclusions reached, are contrary to well-settled principles of law.