(No. 32640.— )

Vissering Mercantile Co. *et al.*, Appellees, *vs.* Frank Annunzio, Director of Labor, *et al.*, Appellants.

*Opinion filed September 24, 1953—Rehearing denied Nov. 16, 1953.*

Hershey, J., dissenting.

Latham Castle, Attorney General, of Springfield, (William C. Wines, Raymond S. Sarnow, and A. Zola Groves, of counsel,) for appellants.

·Pope & Ballard, of Chicago, and Giffin, Winning, Lindner & Newkirk, of Springfield, (Thomas C. Strachan, Jr., and Montgomery S. Winning, of counsel,) for appellees.

Mr. Justice Bristow delivered the opinion of the court:

The defendants, Director of Labor, Attorney General, Director of Finance, Auditor of Public Accounts, and Treasurer, of the State of Illinois, have appealed from a decree of the circuit court of Sangamon County declaring unconstitutional the act in relation to minimum fair wage standards for women and minors, (Ill. Rev. Stat. 1951, chap. 48, par. 198.1 *et seq.*,) and enjoining its enforcement by defendants, in a proceeding instituted by the plaintiff retail enterprises, individually and as taxpayers.

This direct appeal presents essentially five legal issues for determination: whether the act is a constitutional exercise of the police power; whether section 3, authorizing the Department of Labor to make certain investigations, violates section 6 of article II of the State constitution,

relating to unlawful searches and seizures; whether section 9 of the act confers judicial power upon an administrative body in violation of article III and section 1 of article VI of the State constitution; whether section 13 of the act, defining the scope of review of the Department's orders, deprives the court of judicial power, and violates the due-process clauses of the State and Federal constitutions; and whether by reason of the unconstitutionality of any of those provisions the entire act is rendered void.

From the pleadings it appears that plaintiffs, retail merchants similarly situated as members of a class, allege that the Department of Labor, pursuant to the act, which is entitled "An act in relation to minimum fair wage standards for women and minors, and providing penalties for the violation thereof," has proceeded to make a wage survey for the retail trade, which consists of investigating wages paid to women and minors engaged in certain retail occupations; has demanded in writing that certain plaintiffs furnish information from their private books; has orally demanded from the plaintiffs Mandel Brothers, Inc. and Chas. A. Stevens & Co. the production of their private books without warrant or process, and upon plaintiffs' failure to comply therewith, defendants Director of Labor and Attorney General have filed certain informations against plaintiffs, the filing of which, plaintiffs assert, constitutes an unlawful taking of their property contrary to the State and Federal constitutions. Plaintiffs further allege that defendants are about to expend public funds in the enforcement of the act, which expenditures will be illegal because of the unconstitutionality of the act. Plaintiffs and other members of the class similarly situated complain that they have suffered, and will continue to suffer, irreparable injury, for which they have no adequate remedy at law, hence they pray that the act be declared unconstitutional, and that defendants be enjoined from expending funds to administer the act, and from enforcing it against them.

The specific provisions of the act which plaintiffs contend are unconstitutional and render the act void, even if it were otherwise a proper exercise of the police power, are sections 3, 9 and 13.

Under section 3 it is provided in substance that the Department of Labor has power to investigate and ascertain the wages of women and minors in any occupation in the State; to enter the place of business of any employer of women and minors for the purpose of inspecting books, registers, pay rolls and other records that bear on the question of their wages for the purpose of ascertaining whether the orders of the Department have been, and are being, complied with; and to require from the employer statements in writing of the wages paid to all women and minors in his employment.

Under section 9, if the Department has reason to believe that any employer is not complying with any orders under the act, it may summon him to show cause why his name should not be published as having failed to observe the orders, and, after a hearing and finding of nonobservance, the Department may publish the name of such employer and his failure to observe the wage order in any newspaper in the State.

Section 13 provides, in substance, that there shall be no appeal from a Department decision on any question of fact, but there shall be a review as provided in section 19 of the Workmen's Compensation Act, (Ill. Rev. Stat. 1951, chap. 48, par. 172.54,) from any ruling on a question of law in any decision or order of the Department.

The circuit court found subparagraph 2 of section 3, section 9 and section 13 unconstitutional, and held that the unconstitutionality of section 13 rendered the entire act void. Thereupon the court denied defendants' motion to dismiss the complaint, and entered a decree enjoining the Director of Labor, the Director of Finance, the Auditor of Public Accounts and the Treasurer of the State and their

agents from expending any funds for administering the act, and enjoined the defendants and the Attorney General from enforcing the act against plaintiffs.

In determining first whether this act is a constitutional exercise of the police power we are cognizant that the criteria of a proper exercise of the police power, that inherent and plenary power of the legislature to protect public health, safety and general welfare, (*City of Chicago* v. *Gunning System,* 214 Ill. 628,) is whether the statute is reasonably designed to remedy the evils which the legislature has determined exist. (*Stewart* v. *Brady,* 300 Ill. 425.) This court has sustained as a proper exercise of that power numerous statutes affecting the labor contract of women and minors. In *People* v. *Elerding,* 254 Ill. 579, an act limiting to ten hours the time women employed in hotels could work was held valid; in *Ritchie & Co.* v. *Wayman,* 244 Ill. 509, a 10-hour day for women employed in any mechanical establishment, laundry or factory was sustained; in *Gill* v. *Boston Store,* 337 Ill. 70, an act limiting the hours of labor of minors under 16 years of age was sustained.

In the act under consideration the legislature has recognized that oppressive wages—wages which are both less than the fair and reasonable value of the services rendered, and less than sufficient to meet the minimum cost of living necessary for health—constitute an evil jeopardizing the health and welfare of women and minors, who do not have equal bargaining power for wages with men. To remedy that evil the legislature has established a system whereby employers of women and minors may be required to pay fair wages, which are commensurate with the value of the services rendered.

This particular evil has been recognized as a proper subject for the exercise of the police power by numerous State legislatures, which have enacted statutes with varying terms and provisions regulating the wages paid to women

and minors. Some statutes were recommendatory, as in Massachusetts; others, compulsory, as in Oregon; and of the compulsory category, some acts established a legislative standard based on the cost of living to maintain women and minors in good health, others embodied the standard of the value of the services rendered; some prescribed a fixed wage; and still others allowed a commission to determine wages. 5 Geo. Wash. L. Rev. 865; 22 Ia. L. Rev. 565; 37 Harv. L. Rev. 545.

The first test of the constitutionality of these wage fixing statutes came in 1917 in *Stettler* v. *O'Hara*, 213 U.S. 629, when the Supreme Court of the United States in a 4-4 decision, from which Justice Brandeis abstained because of previous interest, affirmed the decision of the Oregon Supreme Court, and upheld a minimum wage statute for women and minors based upon the cost of living. Thereafter, the State courts, reassured by the attitude of the highest court of the nation, affirmed the validity of their own statutes, and between 1917 and 1923 minimum wage laws for women were upheld in Arkansas, (*State* v. *Crowe*, 130 Ark. 272, 197 S.W. 4,) Minnesota, (*Williams* v. *Evans*, 139 Minn. 32, 165 N.W. 495,) and Washington, (*Larsen* v. *Rice*, 100 Wash. 642, 171 Pac. 1037.)

In 1923, however, the Supreme Court of the United States, in *Adkins* v. *Children's Hospital*, 261 U.S. 525, held unconstitutional a minimum wage law passed by Congress in the exercise of its plenary power over the District of Columbia for the benefit of women and minors based upon a standard of the cost of living to maintain them in good health and morals. Justice Sutherland rendered the majority opinion, to which Justices Taft and Holmes filed separate dissents. Inasmuch as the rationale of the majority opinion embodies some of the arguments advanced by the petitioners herein, and since that rationale was subsequently overruled by the court, as will presently appear, it is material to note the arguments set forth.

Justice Sutherland states, in substance, that, although there is no such thing as absolute freedom of contract, yet freedom is the rule and restraint the exception, justified only by exceptional circumstances. Whether such circumstances were present in that case could be determined only by analogy to those interferences with liberty to contract which had previously been upheld. Those include statutes fixing rates and charges exacted by businesses impressed with public interest; statutes relating to the performance of public work contracts; statutes prescribing the character, methods and time for payment of wages; and those fixing the hours of labor. Minimum wage legislation, while analogous to the last group, was deemed distinguishable, since the amount of wages is the heart of the contract, whereas the regulation of hours leaves "the heart untouched and tends to preserve the essential liberty of the contracting parties," so that affirmation of the hour regulations would not necessitate upholding minimum wage legislation.

The court also stated that the selection of women employees as a special class was arbitrary since the revolutionary changes in the contractual, political and civil status of women had put them on an equal level with men. Moreover, the law could not be deemed a valid exercise of the police power because it is impossible to fix minimum wages which can apply with even justice to all women; it cannot be shown that well paid women safeguard their morals any more than poorly paid women; and the declared basis of the statute is a living wage to the employee, overlooking the moral requirement that the amount paid should be the just equivalent of the services rendered.

The dissenting opinion of Justice Taft noted that the court was not called upon to expose its socio-economic views, and that it could not logically sustain maximum hour regulations and at the same time invalidate minimum wage legislation.

In his dissenting opinion Justice Holmes stated: "I confess that I do not understand the principle upon which the power to fix a minimum for the wages of women can be denied by those who admit the power to fix a maximum for their hours of work. The bargain is equally affected whichever half you regulate."

The majority opinion in that case was interpreted to deny only the legislative power to enact wage legislation measured by the cost of living. That interpretation was predicated upon Justice Sutherland's statement: "The feature of this statute which perhaps more than any other puts on it a stamp of invalidity is the fact that it exacts from the employer an arbitrary payment for a purpose and a basis having no causal connection with his business or the work the employer engages to do. The basis is not the value of the services rendered, but the extraneous circumstances that the employee needs to get a prescribed sum."

To conform with the implication in that statement, the Illinois statute, as well as those of other States, was drafted to define a "fair wage" as one "fairly and reasonably commensurate with the value of the services or class of service rendered."

During the ensuing years measures designed to promote health and safety were sustained by the Supreme Court, which steadily subordinated liberty of contract to protective legislation. (37 Harv. L. Rev. 535; Hamilton, Freedom of Contract, VI Soc. Sci. Ency. 450.) This trend culminated in the Supreme Court's unequivocal reversal of the *Adkins case* in *West Coast Hotel Co.* v. *Parrish,* 300 U.S. 379, where the majority opinion, delivered by Justice Hughes, held valid a Washington statute based upon a wage sufficient to maintain women in health.

While Justice Hughes did not minimize the health objectives of the statute, nevertheless, in specifying as another cogent ground for the decision the correction of the eco-

nomic ills through the exercise of the police power, he suggested an additional constitutional justification for regulative measures. The court stated: "There is an additional and compelling consideration which recent experience has brought into a strong light. The exploitation of a class of workers who are in an unequal position with respect to bargaining power and are relatively defenseless against the denial of a living wage, is not only detrimental to their health and well being, but casts a direct burden for their support on the community. We may take judicial notice of the unparalleled demand for relief which arose during the period of the depression. * * * The community is not bound to provide what is in effect a subsidy for unconscionable employers, but may direct its law-making power to correct the abuse which springs from their selfish disregard of the public interest."

Thus, the court subordinated the concept of liberty of contract to the police power of the legislature to protect the health of women and minors, and to remedy an unjust economic burden imposed upon the community. After that decision the constitutionality of minimum wage legislation for women, predicated not only upon the wage necessary to sustain women in health, but on the cost of living and on the fair value of services rendered, was upheld by numerous courts. *In re Fisher,* 344 Pa. 96, 23 Atl. 2d 878; *Young* v. *Willis,* 305 Ky. 200, 203 S.W. 2d 5; *Associated Industries of Oklahoma* v. *Industrial Welfare Com.* 185 Okla. 177, 90 Pac. 2d. 899; *California Drive-in-Restaurant Assn.* v. *Clark,* 22 Cal. 2d 287, 140 Pac. 2d 657; *People on Information of Siegel* v. *Weingrad,* 26 N.Y.S. 2d 841.

In the *Siegel case* the court held that although the present New York minimum wage law for women and minors was substantially the same as that held unconstitutional, (*Morehead* v. *New York ex rel. Tipaldo,* 298 U.S. 587, 56 S. Ct. 918,) nevertheless, since the Supreme Court in the *Parrish case* expressly overruled the authority on which

the *Tipaldo case* was based, the present statute may now be deemed constitutional.

We are cognizant that these State court decisions are of limited value as precedent in construing the Illinois constitution (*People* v. *Stevenson*, 281 Ill. 17, 25,) even though they involve statutes with the same purport and essentially the same standards. However, as hereinbefore noted, the Illinois courts have sustained, as reasonable exercises of the police power, legislation affecting the hours of labor of women and minors, and, as stated by Justice Holmes, the bargain is equally affected, whichever half (wages or hours) you regulate. Moreover, it is our judgment in the light of the *Parrish case,* and the approach of the Supreme Court of the United States therein, that the Illinois Minimum Wage Act may be determined to be a reasonable exercise of the police power. The standards prescribed in the act in defining "Oppressive Wages" and "Fair Wages" are designed to eliminate starvation wages for women and minors, and to equalize their bargaining power, and would therefore tend to protect their health and welfare. These health and welfare objectives of the act are not destroyed or minimized, as plaintiffs suggest, merely because the legislature at the same time endeavored to effect that minimum wage in a manner which would also be fair to employers, by providing that the wages be related to the services rendered. That standard, furthermore, would even satisfy the more conservative approach of the court in the *Adkins case,* wherein the unconstitutionality of the wage statute was predicated largely on the ground that the wage was not related to the value of the services.

Although we have sustained herein the constitutionality of the objectives of this act, it is established that the means of administration and enforcement must also conform to the limitations imposed by the Federal and State constitutions.

Plaintiffs contend that section 3 of the act, which authorizes the Department and its agents to enter any

place of business employing women and minors and to inspect all books, registers, pay rolls and other records bearing upon the wages of women and minors in order to ascertain whether the orders of the Department are being complied with, violates section 6 of article II of the Illinois constitution, relating to unlawful searches and seizures, and the fourteenth amendment to the Federal constitution.

In support of the constitutionality of the provision defendants have cited valid Illinois statutes providing for similar investigations into the business affairs of building and loan associations, (chap. 32, par. 240,) insurance companies, (chap. 73, pars. 744, 1014, 1020,) and banks, (chap. 16½, par. 8). Plaintiffs, however, urge that these statutes are distinguishable since they relate to employments affected with a public interest, and consequently may be subject to regulation, whereas section 3 of the Minimum Wage Act applies to all occupations employing women and minors.

This distinction is too tenuous. The cited statutes are regulatory measures enacted pursuant to the police power of the State; similarly, the Minimum Wage Act is also being sustained herein as a valid exercise of the police power, enacted to protect the health and welfare of women and minors. In all of these statutes the power of investigation is authorized to implement and effectuate the objectives of the particular law. Inasmuch as all of them are police measures, there can be no cogent legal grounds for distinguishing only the investigative power provided in the Minimum Wage Act, which power is no broader than that provided in the other statutes. Hence those valid statutes cited by defendants may properly be regarded as precedent for sustaining the validity of section 3 of the act.

In further support of the validity of this section defendants argue that comparable provisions in the Federal Fair Labor Standards Act (29 U.S.C.A. secs. 209, 211a,) have been held constitutional. The Supreme Court of the United States in *Oklahoma Press Publishing Co.* v. *Walling*, 327

U.S. 186, 66 S. Ct. 494, sustained the constitutionality of the provisions in the Federal act whereby the Administrator is authorized to investigate and gather data regarding wages and other conditions and practices of employment, and to enter and inspect such places and records as may be necessary to determine whether there has been a violation of the act or which might aid in the enforcement of its provisions.

In the *Walling case* the court reviewed the decisions relating to the scope of the government's power to investigate private enterprise and noted that a compromise had been worked out in a manner to secure the public interest, and at the same time to guard the private ones against only abuses from which protection rightfully may be claimed. The court endeavored to propound the broad confines of the investigative power within the limitations of the search and seizure prohibition of the Federal constitution, and stated: "It is enough that the investigation be for a lawfully authorized purpose within the power of Congress to command * * * and the documents sought are relevant to the inquiry. Beyond this the requirement of reasonableness, including particularity in 'describing the place to be searched and the person or things to be seized,' * * * comes down to specification of the documents to be produced, adequate, but not excessive for the purposes of the relevant inquiry."

It is evident that section 3 comes within those broad limitations. The investigation authorized is for a lawful purpose, *i.e.*, to effectuate a minimum wage law for women and minors validly enacted under the police power; and the requirements of reasonableness are met since the section authorizes only investigation of books and records which bear on the question of wages of women and minors, so that any investigating official must limit his inquiry to those issues, and may demand only documents relevant thereto.

Plaintiffs, however, have endeavored to distinguish between the investigative powers sustained by the Supreme

Court, and those prescribed in section 3, on the ground that the Federal Act requires a *subpoena* in order to render the investigation compulsory. (*Cudahy Packing Co.* v. *Holland,* 315 U.S. 357, 62 S. Ct. 651.) In operation, the *subpoena* requirement would be a formality, since if any record or information bore on the question of wages of women or minors, it could ultimately be demanded and secured by the Department even if a *subpoena* were required. Whereas, if the document or inquiry were not relevant to the statutory purpose, the government could not constitutionally secure the document or information even if the statute required a *subpoena.* It is the nature of the investigation authorized by the statute, not the formalities attending its exercise, which is determinative. With the exception of the formality of the *subpoena,* the nature of the investigative power authorized under the Federal act is precisely the same as that provided under section 3. The Federal act was sustained in the *Walling case,* not because of the *subpoena* requirement, but because the scope of the investigation was limited to relevant inquiry, reasonably related to a valid statute, and such investigation was essential to effectuate that statute. Hence, section 3 cannot be held to offend the search and seizure prohibitions of either the Federal or State constitutions.

Plaintiffs further contend that section 9 of the act, which authorizes the Department, after a hearing and findings of nonobservance of an order, to publish in any newspaper in the State the names of any employers failing to observe the order, confers judicial power on the Department of Labor in violation of article III and section 1 of article VI of the Illinois constitution. The constitutional doctrine of separation of powers is set forth in article. III, and the judicial power of the State is vested in the courts under section 1 of article VI. Plaintiffs argue that the publication provided in section 9 is tantamount to the imposition of a penalty for an alleged infraction of the law, without

a judicial determination of the merits of the cause, and consequently confers a judicial function upon an administrative agency.

In support of this interpretation, plaintiffs cite *Reid* v. *Smith,* 375 Ill. 147, where the court held that a statute attempting to establish a prevailing wage standard for public contracts and authorizing forfeitures or penalties to be retained by the body awarding the contract was unconstitutional on the ground that the forfeiture provisions conferred judicial power upon an administrative agency contrary to article III of the Illinois constitution. Plaintiffs argue that the difference between the monetary penalties prescribed in that statute, and the publication specified herein, which would ultimately inflict financial loss, is not material.

We cannot agree with that contention. The basic tenet of the *Reid case* is that an administrative body may not usurp the judicial function by imposing a penalty. However, under section 9 of the act the tribunal, by permitting or authorizing publication of the nonobservance of an order, is not imposing a penalty, since that information would be public knowledge and could be printed in any newspaper irrespective of the consent or authorization of the administrative agency. The financial loss which might ensue from the publicity is inflicted, not by the administrative agency, as in the *Reid case,* but by the public, which might abstain from purchasing from the offending company, just as the public would do in response to any other undesirable publicity. This possibility that the public reaction might cause financial loss does not convert section 9 into a penalty provision, nor can it be construed as conferring judicial power on an administrative body. Hence no constitutional doctrines are infringed.

It may be noted further that the publication authorized in section 9 is not novel in Illinois statutory law, for similar publication of the result of administrative investi-

gation of building and loan associations is authorized whenever the Auditor of Public Accounts shall deem it for the best interests of the public. (chap. 32, par. 240.)

Plaintiffs also challenge the constitutionality of section 13 of the act which relates to judicial review, on the ground that it permits review of only questions of law, and thereby deprives the courts of judicial power in violation of section 1 of article VI, and deprives individuals of due process of law under the guarantees of the State and Federal constitutions.

Section 13 provides that all questions of fact arising under the act shall be decided by the Department and that there shall be no appeal therefrom. Review of questions of law is authorized as under section 19 of the Workmen's Compensation Act. Although that section of the Workmen's Compensation Act authorizes a review by *certiorari* of both questions of fact and law, since section 13 permits the *certiorari* procedure to be utilized only with respect to questions of law, we must adjudge the constitutionality of this limited scope of review.

We are cognizant of the established distinction in the case law between the constitutional requirements for review from administrative bodies which are legislative in character and those which perform semijudicial or *quasi*-judicial functions. (*People ex rel. Radium Dial Co. v. Ryan*, 371 Ill. 597; *Nega v. Chicago Railways Co.* 317 Ill. 482; *Ohio Valley Water Co. v. Ben Avon Borough*, 253 U.S. 287.) In the *Nega case* the court exhaustively analyzed the cases involving the constitutionality of provisions limiting judicial review to questions of law. In its rationale the court recognized that due process of law requires judicial review of questions of fact where the acts and orders of the administrative body are legislative in character, but not where they are judicial in character. The court held therein that since the function of the Industrial Commission partook of the nature of a judicial proceeding, and its functions were

judicial rather than legislative, the legislature had power to limit judicial review to questions of law; hence, the review provisions therein did not violate the due-process clause of the Federal constitution. Where, however, the acts of the tribunal are legislative in character, as rate making, it has been held that to deny the courts the right to review the facts and action of the tribunal would constitute a violation of the due-process clause. *Commerce Com. ex rel. Lumaghi Coal Co.* v. *Chicago and Eastern Illinois Railway Co.* 332 Ill. 243; *Commerce Com. ex rel. City of Bloomington* v. *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* 309 Ill. 165.

The acts of the Department of Labor pursuant to the minimum wage act in controversy, in establishing minimum fair wages and in establishing or modifying the regulations to implement such wage rates, are essentially legislative in character rather than judicial. The functions are comparable to the rate making functions of the Commerce Commission, hence section 13, which prescribes the exclusive mode of review of decisions under the act, and which denies any judicial review of questions of fact, violates the due-process clauses of the State and Federal constitutions, and deprives the court of their proper judicial power.

Although we have sustained plaintiffs' contention with reference to the unconstitutionality of section 13 of the act, we cannot accept plaintiffs' construction, which was sustained by the circuit court, that the unconstitutionality of that section would render the entire act unconstitutional.

The cases reiterate the rule that the invalidity of one section of a law does not affect the validity of the remainder unless it appears that the legislature would not have enacted the law without including the invalid portion. (*McDougall* v. *Lueder,* 389 Ill. 141.) The legislative intent to enact the statute irrespective of the unconstitutionality of any particular provision is manifest in section 17 of the act, which provides, "If any provision of this act or

the application thereof to any person or circumstance, is held invalid the remainder of the act and the application of such provision to other persons or circumstances shall not be affected thereby."

Furthermore, the provision which we have held invalid is not so integrated in the act as to render the act incapable of being executed. The basic system for the establishment and enforcement of minimum wages for women and minors set forth in the statute is capable of operation even though the mode of judicial review may be held insufficient to satisfy the constitutional requirements for due process of law. Under these circumstances the unconstitutionality of section 13 cannot invalidate the entire act, and the decree of the circuit court declaring the statute unconstitutional and enjoining defendants from administering or enforcing it should properly be reversed. *Decree reversed.*

Mr. Justice Hershey, dissenting:

Although I am in agreement with most of the majority opinion, I am unable to agree with it in its entirety. It is my opinion that the publication provided in section 9 amounts to the imposition of a penalty for an alleged infraction of the law, without a judicial determination of the merits of the cause. Article III of the constitution of the State of Illinois divides the powers of government of this State into three distinct departments—legislative, executive, and judicial, and prohibits the exercise of any power by one of these departments of any part thereof properly belonging to either of the other departments.

The imposition of a penalty for an alleged infraction of law is a penalty and properly a power belonging exclusively to the judiciary. (*Reid* v. *Smith,* 375 Ill. 147.) It is entirely unrealistic to treat the publication under section 9 of the act as anything other than a penalty. Although the direct action of the administrative agency does not inflict the alleged noncomplying employer with financial

loss, the majority is cognizant of the fact that the result will be financial loss through loss of good will and the reaction of the public. Could the legislature have been only less cognizant of that fact? The determination and order is no less a judicial act of the Department of Labor simply because the sanctions are employed by the general public. Section 9 is a penalty provision and infringes constitutional doctrines.

It is obvious that section 9 is not of such character as to render the remaining sections of the act unconstitutional. It is completely separable from the remainder of the act. Failure to include this section would not likely have deterred the legislature from enacting the law. Section 17 makes this perfectly clear, as reviewed in the majority opinion.