## Fisher's Petition.

Argued January 5, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN and PARKER, JJ.

*Thomas D. Caldwell,* with him *Carl B. Stoner,* of *Caldwell, Fox & Stoner,* and *Samuel K. McCall,* for appellant.

*Claude T. Reno,* Attorney General, with him *M. Louise Rutherford,* Deputy Attorney General, for appellee.

OPINION BY MR. CHIEF JUSTICE SCHAFFER, January 26, 1942:

Appellant attacks the constitutionality of the Act of May 27, 1937, P. L. 917, 43 PS Sec. 331a, providing for the establishing of minimum fair wages for women and minors on the single ground that it is an improper delegation of legislative power and authority.

Appellant and others, who were permitted by the court below to intervene, are engaged in the laundry business. The authority designated by the act to fix the minimum wages of women and minors in that industry established a rate of 27 cents per hour.

The act recites, among other things, that women and minors are employed in some occupations in trade and industry in the Commonwealth at wages unreasonably low and not fairly commensurate with the value of the services rendered and that it is imperative that the police power shall be exercised for the protection of industry, of the women and children employed therein and the public interest of the community with regard to their health and well being. To carry out the purposes of the act the Secretary of Labor and Industry is given power to set up wage boards to report to him minimum fair wages for such women or minors as may be engaged in the occupations covered by the statute. The ultimate power to fix the wages is given to the Secretary, with a right of

review by the Court of Common Pleas of Dauphin County except upon questions of fact.

As the basis of appellant's argument before us, attention is called to Article 2, Section 1, of our Constitution: "The legislative power of this Commonwealth shall be vested in a General Assembly which shall consist of a Senate and a House of Representatives" and it is said that this provision is violated because in certain of its important aspects the Wage Board provided for by the act, and the Secretary, have conferred upon them legislative power in that no standards are fixed by the statute to serve as guides to their determination. In this connection, we are referred to what was said in *Holgate Bros. Co. v. Bashore,* 331 Pa. 255, 262, 200 A. 672, " 'In creating such an administrative agency the legislature, to prevent its being a pure delegation of legislative power, must enjoin upon it a certain course of procedure and certain rules of decision in the performance of its function.' . . . If the legislature fails, however, to prescribe with reasonable clarity the limits of the power delegated or if those limits are too broad its attempt to delegate is a nullity."

We cannot accept the argument that no standards are set up in the statute to guide determination of what is a fair wage. Subsection 7 of section 2 provides, 43 PS Sec. 331b: "A 'fair wage' shall mean a wage fairly and reasonably commensurate with the value of the service or class of service rendered." This has been one of the principles upon which wage claims have been adjudicated by the courts, where there has been no fixed sum named for the services: 71 C. J. 161, 162.

Section 5, 43 PS Sec. 331e, with the heading "Basis of Fair Wage" directs: "In establishing a minimum fair wage for any service or class of service under this act, the secretary and the wage board, without being bound by any technical rules of evidence or procedure, may—

"(1) Take into account the cost of living, and all other relevant circumstances affecting the value of the service or class of service rendered.

"(2) Be guided by like consideration as would guide a court in a suit for the reasonable value of services rendered where services are rendered at the request of an employer without contract as to the amount of the wage to be paid.

"(3) Consider the wages paid in the Commonwealth for work of like or comparable character by employers who voluntarily maintain minimum fair wage standards."

As the purpose to be achieved by this statute is a public one and by it power is given to public officers which affects the rights of third persons the word "may" is to be read "shall": *Montgomery v. Poorman*, 6 Watts 384, 387; *Commonwealth v. Select and Common Councils of Pittsburgh*, 34 Pa. 496; Endlich on Interpretation of Statutes, Sec. 412; *Commonwealth ex rel. v. Woodring*, 289 Pa. 437, 137 A. 635; *Suermann v. Hadley*, 327 Pa. 190, 193 A. 645. Moreover, to reach a conclusion as to constitutionality the word "may" in a statute is to be read "shall" if such reading leads to constitutionality: 59 C. J. 1082, and cases cited. So construing the provisions of section 5 providing what the Secretary and Wage Board must do as mandatory, and taking them in connection with section 2(7), it cannot be successfully argued that ample standards are not fixed for the action of the public authorities charged with the duty to fix a minimum fair wage and, therefore, there is no improper delegation of legislative power or authority.

We think the fact that the Secretary of Labor and Industry has the ultimate decision as to the amount of the wage does not impair the statute. In reaching decision he is as much bound by the standards fixed as is the Board.

The order of the court below is affirmed at appellant's cost.