Scranton, Appellant, *v.* Hollenberg.

Argued March 3, 1943. Before KELLER, P. J., BALD-

Rige, Stadtfeld, Rhodes, Hirt, Kenworthey and Reno, JJ.

*Jerome K. Barrett,* with him *Daniel H. Jenkins,* Assistant City Solicitors, and *Jerome I. Myers,* City Solicitor, for appellants.

*Sidney Zachery Levy,* with him *Emanuel Laster,* for appellee.

Opinion by Keller, P. J., April 14, 1943:

The defendant, Harry Hollenberg, was arrested on October 2, 1941 charged with violating an ordinance of the City of Scranton, approved December 30, 1940, entitled, "An ordinance for promoting the public health, safety, comfort and welfare throughout the City of Scranton by regulating the sale, re-sale, exchanging or disposing in any manner of any used or second-hand plumbing fixtures and providing a penalty for violation thereof." The complaint was sworn to by the plumbing inspector of the city. The ordinance was enacted under authority of the Act of April 14, 1937, P. L. 313, which, in order to promote the public health, safety, morals and general welfare, gave all cities, incorporated towns, boroughs and townships power and authority, inter alia, to enact and enforce suitable ordinances to govern and regulate the construction, alteration, repairs, sanitation, ventilation, water supply,

toilet facilities, drainage, etc. of all buildings. It may also be considered in connection with the enforcement of the Act of June 7, 1901, P. L. 493, providing for the examination, licensure, etc. of plumbers in second class cities and prescribing rules and regulations for plumbing, house drainage, etc. therein, as amended by Act of July 31, 1941, P. L. 603, with special reference to sections 19 and 43. [1]

The body of the ordinance reads as follows:

"Section 1. The Council of the City of Scranton hereby ordains that from and after the passage and approval of this Ordinance it shall be unlawful for any person, firm, association or corporation to sell, re-sell, exchange or dispose in any manner of any used or second-hand plumbing fixtures, unless the same has securely attached thereto a label or sticker showing it has been approved for installation and the signature or facsimile thereof of the plumbing inspector of the City of Scranton.

"Section 2. The words 'plumbing fixtures', as used in this Ordinance, shall mean and include all receptacles intended to receive and discharge any liquid or water-carried wastes into a drainage system or treatment works with which they are connected.

"Section 3. It shall be unlawful for any person, firm, association or corporation to sell, re-sell, exchange or dispose of in any manner within the City of Scranton any plumbing fixtures as defined in Section 2, unless the same has attached thereto a label or sticker as described in Section 1.

"Section 4. Any person, firm, association or corporation desiring to secure the stickers or labels hereinabove described, shall make a written application to

---

[1] By the Act of March 9, 1927, P. L. 18, cities of the second class A, to which Scranton belongs, continued to be governed by the laws relating to cities of the second class, until other laws were enacted.

the plumbing inspector of the City of Scranton upon blanks to be furnished by the plumbing inspector, which application shall show:

(a) The name and address of the applicant.

(b) The number and kind of second-hand or used fixtures to be labeled.

(c) Such other information as the plumbing inspector may require.

"When the plumbing inspector is satisfied that the applicant is entitled thereto, such stickers or labels shall be attached to such fixtures of the applicant by the plumbing inspector. It shall be the duty of the plumbing inspector to charge a fee of fifty (50c) cents a fixture for every one of such stickers or labels attached, and to keep a record of all labels affixed by him to any such fixtures.

"Section 5. Any person, firm, association or corporation, or manager thereof, violating any of the provisions of this Ordinance shall, upon conviction thereof before the Scranton City Police Magistrate, be fined not less than ten ($10.00) dollars and not more than fifty ($50.00) dollars, and in default of the payment of any fine imposed by said Magistrate shall be committed to the Lackawanna County Jail for a period not exceeding thirty (30) days."

A hearing was had before Peter W. Haas, Police Magistrate of said city, who, after hearing the witnesses sworn for the prosecution and the defendant himself, adjudged defendant guilty of selling second-hand plumbing fixtures, to wit, a second-hand bath tub to Peter Siekerskas on May 28, 1941, and a second-hand urinal to John Bonadio on September 4, 1941, without having said fixtures approved for installation by the plumbing inspector of said city, in violation of the provisions of said ordinance, and sentenced the said defendant to pay a fine of $25 in each case, or in default of payment thereof that he be committed to the Lackawanna County jail for thirty days.

The defendant had the proceedings removed to the court of common pleas by certiorari.

Defendant assigned eleven errors or exceptions to the proceeding and judgment of the magistrate, ten of which attacked the constitutionality of the ordinance; the eleventh was to the fact that at one place in the transcript, the magistrate referred to the defendant as George Hollenberg, instead of Harry Hollenberg, as it appeared in the complaint or information and in the caption of the proceedings. This was a clerical error which was amendable.

The court of common pleas, after argument, sustained the first exception of the defendant, that the ordinance was an unconstitutional delegation of legislative power by city council to the plumbing inspector in violation of Article II, section 1 of the State Constitution, and set aside the judgment of conviction.

The other exceptions were not sustained or dismissed. We have considered them all, but are of the opinion that if the ordinance is valid in the respect considered by the court, there is no merit in the rest of them.

The subject is one peculiarly within the police power of the city. It affects the public health, safety, comfort and welfare. Nothing is more important—not to say necessary—to the public health and well-being than safe and healthful plumbing, drains, sewage mains and connections, etc. There is no evidence in the record that the fee imposed is unreasonable or excessive or more than will fairly compensate for the inspection and *for the keeping of records of the same,* making entries, etc., or that it is in fact a revenue measure. The constitutional provisions entitling a defendant to a jury trial (Art. I, secs. 6 & 9) do not apply to summary convictions, such as this was (Art. V, sec. 14). The right to trial by jury preserved by the Constitution is

the right as it existed when the provision was first written into our Constitution.

The ordinance might have been more skillfully and carefully drawn, but we are of opinion that considered as a whole it should not be condemned as an unconstitutional delegation of power.

The title of the ordinance shows that the purpose of its enactment is to promote the public health, safety, comfort and welfare in the City of Scranton by regulating the sale, re-sale, exchanging or disposing of second-hand plumbing fixtures.

Hence, when section 1 declares that it shall be unlawful for anyone to sell, re-sell, exchange or dispose of any used or second-hand plumbing fixtures unless the same has securely attached thereto a label or sticker showing that it has been approved for installation, with the signature, or facsimile thereof, of the plumbing inspector of the City of Scranton, it is only reasonable to read into it the purpose as declared in the title, to wit, that it has been approved by the plumbing inspector as fit, safe and in proper condition for installation as a plumbing fixture, having regard to the public health and safety.

The second section provides that "plumbing fixtures", as used in the ordinance shall mean and include all receptacles *intended* to receive and discharge any liquid or water-carried wastes into a draining system or treatment works with which they are connected. We see nothing in the ordinance to prevent the sale of unfit materials as junk—not to be used as plumbing fixtures.

The fourth section provides that when the plumbing inspector is satisfied that the applicant is entitled to the stickers or labels applied for—that is, when he is satisfied that the used or second-hand fixtures are fit, safe and in proper condition for installation as plumbing fixtures—he shall attach the sticker or label secure-

ly to the respective fixture, and make a record of it which he shall keep as an official duty.

It would be foolish to require the City Council to do what the appellee suggests is necessary, viz., that they, as a body, should inspect the fixtures and satisfy themselves that they are fit, safe and in proper condition for installation as plumbing fixtures; or to specify by ordinance all of the defects in a variety of plumbing fixtures which make them unfit for use. Such a course would be so dilatory, unreasonable and burdensome as to be unworkable and would put the inspection in the hands of persons not fitted by training or experience to pass upon it.

The constitutional prohibition against delegation of legislative power *implied* in section 1 of Article II, viz., that "The legislative power of this Commonwealth shall be vested in a General Assembly which shall consist of a Senate and a House of Representatives" is not violated by committing certain legislation relating to municipal affairs to the legislative branch of a municipality, nor by the latter committing to trained and experienced agents the determination of facts necessary to enforce or carry into effect ordinances which it has enacted, which set forth the purpose and scope of its action.

Too narrow a construction of such matters would be simply intolerable. The whole system of health regulations, quarantine, inspection, licensing, etc., is based on the action of experienced and skilled persons who perform the duties assigned them pursuant to the broad general aims and purposes declared by the legislative body. Any attempt of the legislative body to do more than lay out the framework and general aims and purposes of the proposed inspection, etc., would be fatal to its proper functioning. Take, for example, section 19 of the Act of June 7, 1901, P. L. 493, (53 PS §2577) referred to above: "Old house drains and

sewers may be used in connection with new buildings or new plumbing, only when they are *found*, on examination by the board or bureau of health, to conform in all respects to the requirements governing new sewers and drains". "Found ...... to conform", by whom? Not by the General Assembly, or the City Council, but by the proper officer of the board or bureau of health appointed to do that duty. So, too, section 43 of that Act, as amended by the Act of July 31, 1941, P. L. 603 (53 PS §2601 [1942 Annual Pocket Part]), which provides, inter alia, "Any fixture removed from service, either to be discarded or replaced with new by any owner, must have the inspected approval of the inspection department of plumbing under whose jurisdiction it is/was at time of removal before it can be reinstalled. If, after inspection, it is found to conform with proper standard, so as not to create a potential hazard to public or private health, it may be labeled, numbered, and certificate issued for its re-installation with no other limitations reserved. No used plumbing fixtures, intended for sanitary purposes, or any that may be connected to the domestic water system of any dwelling or building, can be installed without the inspection, approval of the department of plumbing, or board or bureau of health."

The removed fixture—before it can be re-installed anywhere—is to have the "inspected approval" of whom? Not the General Assembly or the City Council; but that of the designated official who knows how to inspect it and is qualified to approve. It must be left to his judgment to determine whether it conforms with proper standard, "so as not to create a potential hazard to public or private health". Any other method of inspection and approval would be wholly unworkable.

The Act of June 7, 1901, P. L. 493, referred to above, was upheld as constitutional by the Supreme Court—

affirming the judgment of this court in 26 Pa. Superior Ct. 66—as "a definition and regulation of the police power on a subject which is one of municipal concern." The examination, inspection and approval of plumbing and house drainage in second class cities under that act was to be done by an officer of the board or bureau of health—corresponding to the plumbing inspector—and this court in its opinion in 26 Pa. Superior Ct. 66, said on this subject (pp. 70, 71): "Among subjects of municipal concern, none is more important than the preservation of the public health. The prevention of disease by municipal authority is as clearly a municipal function as the prevention of its spread by quarantine or otherwise ...... And among sanitary conditions, few are more important than a system of plumbing, house drainage, and sewerage which shall be safe and sufficient at every point. The establishment and maintenance of such a system requires expert knowledge and skill. Provisions calculated to insure that the work involved in the system shall be performed only by competent persons, *that the materials used shall be suitable,* and the methods employed adequate, *obviously fall within the regulation of municipal affairs.* The statutory provisions now under consideration clearly meet the constitutional requirements, and must be declared valid". (Italics supplied). See also, *Com. v. Shafer,* 32 Pa. Superior Ct. 497, which upheld the constitutionality of the Act of June 24, 1895, P. L. 232, authorizing Boards of Health in cities and boroughs to adopt and promulgate rules and regulations for the construction of house drainage, etc., and the registration of plumbers.

The legislative body cannot delegate its power to make a law or ordinance; but it can make a law or ordinance to delegate a power to determine some fact or state of things upon which the law makes or intends to make its own action depend. See *Gima v. Hudson Coal Co.,* 310 Pa. 480, 165 A. 850 (affirming 106 Pa.

Superior Ct. 288, 161 A. 903) which discusses the matter at length, beginning with *Locke's Appeal*, 72 Pa. 491, and cites examples of *constitutional delegation of power to determine facts*, as decided by the Supreme Court of this State (pp. 485, 486), and by the Supreme Court of the United States (pp. 487, 488); to which latter may be added *Sproles v. Binford*, 286 U. S. 374, 397.

The principles enunciated in the *Gima* case have been reaffirmed in *Rohrer v. Milk Control Board*, 322 Pa. 257, 277-279, 186 A. 336, and as late as *Fisher's Petition*, 344 Pa. 96, 97-9, 23 A.2d 878, (1942), regulating the minimum fair wages of women and minors.

The cases chiefly relied on by the appellee and the court below,[2] dealt with statutes or ordinances which committed to an officer or department the arbitrary power to grant suspensions or exemptions from their provisions, without setting up any standard for his guidance.

The assignment of error is sustained. The judgment of the court below is reversed and the judgment of the magistrate is sustained and affirmed.

---

[2] *Saccone v. City of Scranton*, 341 Pa. 526, 20 A. 2d 236; *Holgate Bros. & Co. v. Bashore*, 331 Pa. 255, 200 A. 672; *Kellerman v. Phila.*, 139 Pa. Superior Ct. 569, 13 A.2d 84.