W

## Kauffman Estate

2

*Edwin Buchen*, for Commonwealth.

*Spencer R. Liverant* and *W. Burg Anstine*, for appellants.

GROSS, P. J., March 7, 1952.—This is an appeal from a supplemental appraisement for transfer inheritance tax, filed in the estate of William H. Kauffman, late of the Township of West Manchester, York County, Pa.

From the record we find the following facts:

On June 17, 1937, William H. Kauffman, decedent, and his wife, Annie (N.) Kauffman, went to the law office of John A. Hoober, a member of the York County bar, and engaged his services to transfer title to his real estate to himself and wife.

The attorney wrote two deeds, one from Kauffman and his wife to Adam F. Geesey, and one from Mr. Geesey back to Kauffman and his wife "as joint tenants, with right of survivorship and not as tenants in common".

Both of these deeds were executed on June 17, 1937, in attorney Hoober's office, and purported to convey two tracts of land, improved with dwelling houses, situate in the City of York, known as Nos. 806 and 808 East Market Street, and a farm, situate in West Manchester Township, York County, containing 113 acres of land,.plus. These deeds were entered of record in the Recorder's Office of York County on April 20, 1951.

On July 19, 1937, William H. Kauffman died intestate, and letters of administration on his estate were granted to Annie (N.) Kauffman, his widow, on July 26, 1937, and, on the same day, she filed a general appraisement of his estate, showing that he was possessed of personal property consisting of a bank account appraised at the sum of $2,160.37. On August 3, 1937, Stuart B. Lafean, the then transfer inheritance tax appraiser in York County, filed his appraisement for transfer inheritance tax in this estate, in which he appraised the personal property of decedent in the amount of $2,160.37. Neither in the records in the register of wills office nor in the office of the clerk of the orphans' court does it appear that there was any further administration or accounting in this estate.

Decedent left to survive him as his heirs at law, other than his widow, five children, to wit: William M. Kauffman, a son, this appellant; Harry N. Kauffman, a son, who died intestate, unmarried and without issue on March 18, 1949; Noah N. Kauffman, a son; Marie E. Zarfoss and Florence M. Smyser, daughters. All of the living children are of full age and sui juris.

On May 22, 1949, Annie N. Kauffman, the widow, died intestate as to the real estate involved in this appeal, leaving to survive her the above-named four living children.

On September 7, 1950, Marie E. Zarfoss and her brother, Noah N. Kauffman, executed and delivered a quitclaim deed to William M. Kauffman and Florence

M. Smyser for their interest in the West Manchester Township farm and, on the same day William M. Kauffman and his sister, Florence M. Smyser, executed and delivered a quitclaim deed to Mary E. Zarfoss and Noah N. Kauffman for their interest in the two dwelling houses in the City of York.

By deed dated April 20, 1951, Noah N. Kauffman and wife and Marie E. Zarfoss and husband sold and conveyed the two dwelling houses in York to William F. Gregg and Mary Gregg, his wife.

On June 6, 1951, George R. Fleming, assistant appraiser for transfer inheritance tax, filed a supplemental appraisement in the estate of William H. Kauffman, decedent, in which he appraised the two dwelling houses situate in the City of York and the farm in West Manchester Township at the total value of $16,000. This supplemental appraisement does not state on its face any reason for the long delay in the filing of the same.

William M. Kauffman filed his appeal from this supplemental appraisement, which appeal, at the hearing, was formally joined in by Marie E. Zarfoss and Noah N. Kauffman as to the appraisement of the two dwelling houses in the City of York to which they, as heirs at law and by virtue of the quitclaim deed from William M. Kauffman and his sister, Florence M. Smyser, had acquired the exclusive title in fee and which they subsequently conveyed to William F. Gregg and wife.

As required by the acts of assembly, appellant specifies in his appeal numerous objections to the supplemental appraisement, which objections raise the following questions:

1. Did the Commonwealth have the right to file the supplemental appraisement after the lapse of a period almost 14 years after the death of the decedent?

2. Did the conveyance through which title to the real estate was put in the joint names of decedent and his

wife constitute a conveyance made in contemplation of the death of decedent?

3. Did the conveyance from Adam F. Geesey to decedent and his wife create a joint tenancy or an estate by the entireties in the grantees?

4. Did the bona fide conveyance of the two dwelling houses in York by Noah N. Kauffman and wife and Marie E. Zarfoss and husband, on April 20, 1951, preclude the Commonwealth from assessing transfer inheritance tax against these particular two tracts of land?

Prior to the enactment of the Act of June 24, 1939, P. L. 721, the rule with respect to the filing of a second or supplemental appraisement for transfer inheritance tax is clearly stated by Judge Klein of the Orphans' Court of Philadelphia and adopted by the Supreme Court in Heberton Estate, 351 Pa. 564, as follows:

"Throughout the long history of transfer inheritance tax in this state the courts have always held that the appraisement made by the appraisers must be considered as final and, in the absence of fraud, accident, or mistake, the only remedy for an erroneous exercise of judgment by the appraiser is an appeal in accordance with the provisions of the statute. A second appraisement to revise the judgment of the appraiser has always been regarded as a nullity and held to be without authority in law: Moneypenny's Estate, 181 Pa. 309 (1897); Rowell's Estate, 315 Pa. 181 (1934); Ernst's Estate, 317 Pa. 367 (1935); Ramsay's Estates, 342 Pa. 103 (1931)."

Our analysis of Ramsay Estates, 342 Pa. 103, leads us to the conclusion that the doctrine there enunciated by the Supreme Court completely rules the question of the right of the Commonwealth to file a second or supplemental appraisement in the instant case.

The facts in Ramsay's Estates are as follows: William Ramsay, his brother Robert and their sister Mar-

garet Jones, each owned $50,000 par value of bonds—in all respects identical—of the Alabama By-Products Corporation. By an arrangement, apparently designed to escape inheritance taxation, either by permissible tax avoidance or improper tax evasion, each executed an irrevocable deed, placing his or her bonds in trust with the First National Bank and Trust Company of Greensburg, Pa.

In William's deed, the net income was to be paid to Margaret for life with remainder over at her death to her children. In Margaret's deed, the net income was to be paid to Robert for life and at his death to his wife and children and the principal ultimately to his grandchildren. In Robert's deed, the net income was to be paid to William for life and at his death to his wife and daughter and the principal ultimately to his grandchildren.

William Ramsay died in December 1933 and Robert Ramsey died in February 1934. An appraisement for transfer inheritance tax was filed in William's estate on March 2, 1934, and in Robert's estate, November 13, 1935. Neither appraisement included the Alabama By-Products Corporation Bonds.

On August 21, 1939, the original appraiser having died, another appraiser filed supplemental appraisements in each estate for transfer inheritance tax purposes, valuing the bonds in each estate at $17,500. On appeal to the orphans' court by the executors, the supplemental appraisements were set aside and nullified and the Commonwealth appealed to the Supreme Court.

In its opinion affirming the lower court, the Supreme Court reached its decision under the general principle that once an appraisement is made it is res judicata and the same appraiser or a succeeding appraiser cannot go back and revaluate the same assets. When,

therefore, the appraiser in 1934 and 1935 exempted the bonds from tax (presumably on the erroneous judgment of the appraiser that they were untaxable) the only remedy open to the Commonwealth was an appeal and it could not substitute the remedy of a subsequent appraisement.

Only where there has been fraud, an accidental overlooking, or mistake, or where the asset was not revealed to the appraiser, may resort be had to another appraisement.

The court further held in that case that the burden of proof is upon the Commonwealth and not upon the executors to establish the facts that a supplemental appraisement was in order and that this was particularly true because a period of five years had elapsed between the filing of the first and the filing of the supplemental appraisement.

In the instant appeal there is a comparative statement of facts which we think brings it clearly within the ruling of Ramsay Estates, supra.

This decedent died July 19, 1937. The original appraisement for transfer inheritance tax was filed August 3, 1937. Practically 14 years thereafter, to wit, June 6, 1951, the supplemental appraisement was filed by a succeeding appraiser.

The Act of June 24, 1939, P. L. 721, effective on the day of its enactment, does not help the Commonwealth in this appeal. By this act, the Legislature changed *mistake of judgment on the part of the appraiser* from a ground giving rise to an appeal, to a ground upon which a supplemental appraisement might be filed. But the act further provides that this supplemental appraisement *must be made within the period of one year from the date of the resident decedent's death.* It should also be noted that the one-year limitation in the 1939 Act is operative only when the appraiser with *full knowledge of the assets erroneously judges them*

to be untaxable and that the year limitation has no application when fraud, accidental overlooking, mistake or nonrevelation of assets is proven. See Hartman's Estate, 41 D. & C. 492 (1941).

The supplemental appraisement does not show any reason, valid or otherwise, on its face, for the long delay of almost 14 years in filing it. It was incumbent upon the Commonwealth and not upon the executors to prove the justification for its filing after the time limited by the act of assembly for taking an appeal from the first appraisement had expired. The Commonwealth offered no evidence on this subject.

Stuart B. Lafean, the first appraiser, was an experienced, capable and efficient appraiser and the exactitude with which he always performed his duties leads one to surmise that he may have had complete knowledge of the conveyance by Adam F. Geesey to decedent and his wife of the real estate involved in this appeal, and that he concluded that the real estate so conveyed was held by the grantees as tenants by the entireties, and not as joint tenants, and therefore was not subject to transfer inheritance tax.

We cannot, however, substitute a surmise for a proven fact: the Commonwealth has left us in utter darkness as to the reason for the real estate not having been included in the first appraisement.

We may well take judicial notice of the fact that the first appraiser is still living, a resident of York County, and connected with the State Department of Revenue. He undoubtedly would have been an available and a competent and willing witness, but was not called by the Commonwealth. His recollection, if he had any, of his investigation at the time he made the first appraisement, might have shed light upon the real reason for the real estate having been omitted by him from the first appraisement, and failure of the Commonwealth to call him as a witness gives rise to a

suspicion, if not a presumption, that his testimony would have been unfavorable to the Commonwealth: Henry's Penna. Trial Evidence, 32nd ed., sec. 51.

Our attention has been directed to section 3 of the Act of July 12, 1923, P. L. 1078, which provides that every fiduciary, legatee, devisee, grantee or other person or corporation in possession or enjoyment of any property subject to transfer inheritance tax, whether real or personal, of a resident decedent, *shall* file under oath or affirmation, an inventory or schedule of such property, in the office of the register of wills of the county within three months after the death of such decedent, or within three months after acquiring such interest in any property subject to transfer inheritance tax, and, in case of executors and administrators, such inventory or schedule shall include all real estate belonging to such decedent of which such executors or administrators have knowledge.

The act further provides that, if said inventory or schedule is not filed in the register of wills office within three months after the death of the resident decedent, the register of wills *shall* apply to the orphans' court of the county by bill or petition for the purpose of compelling the filing of the same.

The act also provides that, in the event the register of wills fails to take the necessary proceedings to secure the filing of said inventory or schedule of property of a resident decedent, the Auditor General shall have the power vested in the register of wills and at his option may institute such proceedings to compel the filing of the same, and the costs of the proceeding shall be charged against the register of wills and deducted from any commission or fees due him.

It is an admitted fact that Annie (N.) Kauffman, the administratrix of this decedent's estate, did not file any inventory or schedule in the register of wills office, as required by act of assembly. It is also a fact

that the records of the orphans' court do not show that the register of wills instituted any proceedings against the administratrix to compel her to file an inventory or schedule. It is also a fact that the records of this court do not show that the Auditor General instituted any proceedings to compel the filing of an inventory or schedule as required by the act.

The act says that this inventory or schedule *shall* be filed. It further says that the register of wills *shall* compel its filing by due proceedings in the orphans' court. Both the administratrix and the register of wills were delinquent in the performance of their duties in this regard. The word *shall* as used in the act is mandatory: Fisher's Petition, 344 Pa. 96; Crane's Appeal et al., 344 Pa. 624. The register of wills acts as the agent of the Commonwealth in the collection of transfer inheritance tax. The Commonwealth's own agent, therefore, failed to do his duty in not compelling the filing of said inventory or schedule and it is difficult for us to say which is more at fault, the administratrix or the register of wills. However, the failure to file this inventory or schedule does in no sense prove that the Commonwealth's appraiser did not have full knowledge of the asset at the time he made his appraisement.

In Ness Estate, 58 York 53, the author of the instant opinion, in sustaining a supplemental appraisement, laid stress on the fact that no inventory or schedule had been filed under the Act of 1923, but, in the Ness case, the facts are so entirely different from the facts in the instant case that our ruling in the Ness case in no sense controls in the ruling in the instant case. In the Ness case, it was clearly proven that the inheritance tax appraiser did not have knowledge of the assets unappraised in the first appraisement and, therefore, the filing of a supplemental appraisement came within the rule of permitting it to be filed. The funds

appraised in the supplemental appraisement were all intact and holding the fund later to be taxable visited no hardship or different result upon the parties interested than if the fund had been revealed to the appraiser and the tax assessed at the time of the filing of the original appraisement.

In the instant case we have a different situation altogether. Almost 14 years have elapsed since the death of decedent. In the meantime, the real estate appraised in the supplemental appraisement has been transferred to other persons as hereinbefore designated. The administratrix died in May 1949 and John A. Hoober, Esq., the scrivener of the deed conveying the appraised real estate to decedent and his wife, died in September of 1950. It would be unfair, after the lapse of such an interval of time and changed conditions, to permit the Commonwealth to assess this real estate with transfer inheritance tax without proper proof coming from the Commonwealth that its failure to originally assess the tax was due to a cause coming within the rule permitting the filing of a supplemental appraisement as held in Ramsay Estates, supra, and Heberton Estate, supra.

Our conclusion that the supplemental appraisement must be set aside and nullified makes it unnecessary to answer the other questions raised by this appeal.

We, therefore, enter the following

### Decree

And now, to wit, March 7, 1952, it is hereby ordered, adjudged and decreed that the supplemental appraisement for transfer inheritance tax filed in the estate of William H. Kauffman, late of West Manchester Township, York County, Pa., on June 6, 1951, appraising the real estate therein described for transfer inheritance tax purposes is set aside and declared null and void. It is further ordered that the cost of the proceedings be paid by appellants.