Debra Bartholomew Wolfe, Plaintiff *v.* Frank Beal, Secretary of Public Welfare of the Commonwealth of Pennsylvania; Dr. Robert Gatski, Superintendent of Danville State Hospital, Defendants.

Argued February 2, 1976, before President Judge BOWMAN and Judges KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT. Judge CRUMLISH, JR. did not participate.

*Robert B. Elion,* for plaintiff.

*Howard M. Levinson,* Deputy Attorney General, with him *Lawrence Silver,* Deputy Attorney General, and *Robert P. Kane,* Attorney General, for defendants.

OPINION BY JUDGE WILKINSON, March 1, 1976:

Petitioner asks this Court to order the respondents, the Secretary of Public Welfare and the Superintendent of Danville State Hospital, respectively, to destroy all records at Danville State Hospital that pertain to petitioner's confinement after November 21, 1973, in that institution. She had been confined there under an order of the Court of Common Pleas of Northumberland County dated November 21, 1973. She had been unconditionally released from that institution on April 15, 1974. On August 7, 1974, petitioner obtained an order from the Court of Common Pleas of Northumberland County declaring its prior order of November 21, 1973, null and void for lack of due process and ordering it expunged from the records of that court. That order properly expressly stated that that court did not have jurisdiction to consider the destruction of the records and documents of an agency of the Commonwealth. This action in this Court followed.[1]

The respondents maintain the records in question by virtue of the mandate of Section 602(a) of the Mental Health and Mental Retardation Act of 1966 (Act of 1966), Act of October 20, 1966, Special Sess. No. 3, P.L. 96, *as amended,* 50 P.S. §4602(a):

---

1. This action is entitled "Petition to Expunge Confinement Records." It should have been a complaint either in equity or in mandamus, but under the peculiar circumstances of this case and because the respondents have not raised the question, the Court will not do so sua sponte.

" (a) Whenever a person is admitted or committed to any facility or receives services or benefits at a facility under any provision of this act, a complete record pertaining to such person shall be maintained by the facility. Such record shall include, if available, but need not be limited to, applications, petitions, affidavits, orders of court, reports of physicians, psychiatrists, nurses, social workers, police records, financial records, and all clinical records or a full abstract thereof containing all essential particulars, including results of physical examinations, examinations for mental disability, laboratory tests, and any other material with reference to such person."

This is a legislative mandate to maintain these records and there is no legislative authority for their destruction. Hence, this Court is without authority to grant the petitioner's prayer. See *Commonwealth v. Zimmerman,* 215 Pa. Superior Ct. 534, 258 A.2d 695 (1969), wherein the Court of Common Pleas had granted a request for the destruction of a criminal record. The Superior Court reversed, stating:

"Thus, when the lower court ordered the expunging of petitioner's arrest record, it was countermanding the legislative directive to the State Police that such record remain, which it had no authority to do. There is no statutory or common law basis for the lower court's grant of the petition, and we necessarily must reverse the same." *Id.,* 215 Pa. Superior Ct. at 537, 258 A.2d at 696.

In *Commonwealth v. Magaziner,* 50 Pa. D. & C. 2d 291 (1970), the Court of Common Pleas declined to order the chief of police and others to destroy all records in their files concerning the petitioner who had been arrested and acquitted of adultery. In a well-reasoned decision, Judge GAWTHROP, while denying the general relief, did grant the prayer as it related to fingerprints in the file of the chief county detective because such was authorized by

Section 5(c) of the Act of April 27, 1927, P.L. 414, *as amended,* 19 P.S. §1405(c) :

"(c) The district attorneys of the several counties shall keep and arrange files of the fingerprints, taken under the provisions of this act, of persons convicted of crime and shall destroy the fingerprints of all persons acquitted."

It is appropriate to note here that Section 602(d) of the Act of 1966, 50 P.S. §4602(d), specifically provides that the records here involved may be opened to inspection and examination only by those designated by respondents. Under the facts of this case, we admonish the respondents to exercise this authority with great care and to see that those responsible for the custody of these records impound them in such a way that an inadvertent error or carelessness may not expose them to the view of any person not so specifically authorized.

Accordingly, we enter the following

ORDER

Now, March 1, 1976, the prayer of the above petition is denied. Further, the Chief Clerk is directed, in addition to the usual distribution, to send a certified copy of this opinion and order to the respondent, the Superintendent of the Danville State Hospital. Said respondent is directed to place such copy of this opinion and order with the medical file of the petitioner to the end that those limited persons, if any, ever specially authorized by respondents to examine said medical file, shall know that the original commitment was improper and has been expunged from the court records of the Court of Common Pleas of Northumberland County which ordered the commitment.

———

DISSENTING OPINION BY JUDGE KRAMER:

I respectfully dissent, in the belief that the maintaining of the records at a state mental hospital of a citizen who was illegally and unconstitutionally committed vio-

lates Article I, Section 1 of the Pennsylvania Constitution of 1968.

As the majority points out, the Court of Common Pleas of Northumberland County declared its commitent order null and void for lack of due process and further ordered it expunged from the court records; but the trial court declared that it did not have jurisdiction to order the destruction of the records of the Danville State Hospital where Wolfe had been committed. The majority reasons that because there is a legislative mandate to maintain records of patients at state mental hospitals, but no legislative authority for their destruction, this Court is without authority to order such destruction.

Article I, Section 1 of the Pennsylvania Constitution of 1968 reads as folows:

"All men are born equally free and independent, and have certain *inherent and indefeasible rights,* among which are those of *enjoying and defending* life and liberty, of *acquiring, possessing and protecting* property and *reputation,* and of pursuing their own happiness." (Emphasis added.)

Most of the cases involving a person's right to privacy are criminal cases or cases involving the freedom of the press, neither of which is involved in this case. A careful reading of this section, however, leads one immediately to recognize that every citizen has an indefeasible right to enjoy and protect his or her reputation. It is inconceivable to me that records maintained in a state mental institution would not directly affect a citizen's reputation, which he or she has a constitutional right to defend and to protect.

This is not a case where the government properly incarcerated or committed a citizen to a state institution; rather, this is a case where a citizen was illegally and unconstitutionally (as decided by the trial court) confined in such an institution, and, on balance, I can conceive of no state interest in maintaining records of such

an occurrence. Even if such an interest were advanced, I seriously doubt that it would be sufficient to outweigh the constitutionally protected interest in privacy and good reputation.[1]

I have no reservation that the government may keep a notation adequate to permit the auditing authorities of the State to perform their functions, but there is no need to keep any of the intimate and technical records of the mental condition of any citizen who was illegally and unconstitutionally committed. The majority seems to recognize this as a problem, for it admonishes the Commonwealth's officials to exercise care that such records be impounded and not exposed to unauthorized persons. Even if I could agree with the majority opinion on the basis of some overriding state interest, I would further admonish the officials not only to impound but to seal such records with tamper-proof metal clasps which would indicate whether the records have been opened. I would also require that no such records be made available to anyone without an order of the trial court which improperly authorized the commitment and the resulting records, and then only upon reasons of a compelling and necessitous nature. Since I believe that Article I, Section 1 is sufficient authority for this Court to order the records expunged, I likewise view this provision as authority for a protective order of this nature.

Our Superior Court, in *Aquino v. Bulletin Company,* 190 Pa. Superior Ct. 528, 532, 154 A. 2d 422, 425 (1959), on the subject of the right of privacy, stated:

"Although not clearly defined, the right of privacy has been referred to as 'the right to live one's life in seclusion, without being subject to unwarranted and undesired publicity . . . the right to be let alone.' Hull

---

1. For a discussion of an analogous situation involving the criminal records of those who are arrested but not convicted, *see* "Branded: Arrest Records of the Unconvicted," 44 *Miss. L.J.* 928 (1973) and "Police Records of Arrest: A Brief For The Right To Remove Them From Police Files," 17 *St. Louis U.L.J.* 263 (1972).

v. Curtis Publishing Co., 182 Pa. Superior Ct. 86, 90, 125 A. 2d 644, 645 (1956); Kerby v. Hal Roach Studios, Inc., 53 Cal. App. 2d 207, 127 Pa. 2d 577, 579 (1942). It has also been defined as the right of a person to be free from unwarranted publicity or unwarranted approbation or exploitation of one's personality; the publicizing of one's private affairs with which the public has no legitimate concern, or the wrongful intrusion of one's private activities in such manner as to outrage or cause mental suffering, shame or humiliation to a person of ordinary sensibilities."

As *Acquino* recites, an invasion of privacy is actionable as a tort. *See also Restatement of Torts,* §867 and 37 P.L.E., *Torts* §6. Of even longer standing recognition, of course, are the various remedies for defamation. The common law, therefore, recognizes that a citizen has a right to privacy, and to protect his or her reputation. In light of the specific *constitutional* recognition of these rights, I cannot agree that this Court lacks the power to grant the relief requested by Wolfe merely because she can point to no statute which expressly grants that power.

This case involves an illegal and unconstitutional invasion into the life of Debra Wolfe, and I fail to see where the public or the government has any legitimate concern in maintaining records of a commitment which was illegally and unconstitutionally imposed upon her. This is an outrage which could cause her mental suffering, shame and humiliation, and it is a trespass on her privacy to which courts of equity should be sensitive. Common decency cries out for the destruction of such records, and the mere fact that the Legislature has not provided for such protection does not mean that a court of equity cannot protect Wolfe's constitutional rights. I would overrule the preliminary objections, permit the filing of an answer, and proceed to trial.

JUDGE BLATT joins in this dissent.