UNITED STATES of America ex rel. Kenneth SOUDER, Petitioner,

v.

Ulysses S. WATSON, M.D., Superintendent, Farview State Hospital, Waymart, Pennsylvania, Respondent.

Civ. No. 74–279.

United States District Court, M. D. Pennsylvania.

April 28, 1976.

David Ferleger, Mental Patient Civ. Liberties Project, Philadelphia, Pa., for petitioner.

Robert P. Kane, Atty. Gen., Lawrence Silver, Deputy Atty. Gen., Chief, Civ. Litigation by Allen C. Warshaw, Deputy Atty. Gen., Harrisburg, Pa., for respondent.

## MEMORANDUM

HERMAN, District Judge.

Before the court is a petition by a state prisoner for a writ of habeas corpus which challenges the constitutionality of Section 411 of the Pennsylvania Mental Health and Mental Retardation Act of 1966, 50 P.S. § 4411.[1]

---

1. Section 4411 reads as follows:

"Commitment of person undergoing sentence and detained in a penal or correctional institution

"(a) Whenever a person undergoing sentence and detained in a penal or correctional institution, is believed to be mentally disabled so that his commitment to a facility is necessary, a petition for such commitment may be presented to the court which imposed sentence. The petition may be made by the warden or other officer in charge of the detaining institution or counsel for the person so sentenced.

"(b) To assist in determining the questions raised by the petition, the court may adopt one or any combination of the procedures set forth in section 408(b).

"(c) After consideration of the petition and all the evidence presented, the court may order the commitment of such person to a designated facility if satisfied that the person is mentally disabled and that his commitment is necessary.

"(1) The time during which he is committed shall be computed as part of the term for which he is sentenced.

"(2) If it is determined that a prisoner who has been committed to a facility in accordance with the provisions of this section, will need further care after the expiration of his maximum sentence or sentences, the director shall initiate appropriate proceedings under this act as if no crime had been involved.

"(3) If, before the expiration of his sentence, sufficient improvement in condition results so that care in such facility is no longer necessary, the director of the facility in which he is detained shall certify such fact to the committing court and he shall be returned on order of such court to the penal or correctional institution from which he was removed."

As the parties have stipulated the salient facts, no hearing has been conducted in this case. The facts are as follows.

Petitioner is a citizen of the United States and of the Commonwealth of Pennsylvania. In 1962 he was sentenced to life imprisonment upon a finding of guilty of murder in the first degree. He was initially imprisoned at Graterford. In 1965 he was transferred to the State Correctional Institution at Pittsburgh. At his request, he was transferred to Farview State Hospital in 1967. In 1971 he was returned to Pittsburgh.

While at Pittsburgh, the prison's deputy superintendent filed a petition for commitment of Souder. A hearing on the petition was held on April 27, 1972, pursuant to 50 P.S. § 4411 (hereafter "§ 411") in the Luzerne County Court of Common Pleas. *Commonwealth v. Souder,* No. 1813, March Term, 1972. Petitioner received no personal notice regarding this hearing nor was he present at the hearing. His mother received notice of the hearing but she did not attend. Officials of the Western Penitentiary and the county public defender were notified of the hearing. After the hearing began, but before any testimony was presented, the public defender came into the courtroom and entered his appearance on Souder's behalf. No relative, guardian or friend of petitioner was consulted about the action to be taken prior to the filing of the commitment petition. Petitioner was not represented by counsel in any of the proceedings prior to the April 28th hearing.

The psychiatrists and experts who evaluated petitioner were appointed by the court. They were also employed as consultants by the State Correctional Institution at Pittsburgh. No independent expert was appointed to assist petitioner at the commitment hearing.

The psychiatrists who examined petitioner for the purpose of reporting to the court did not inform him of the purpose of the examinations or that he had a right not to speak with them or that anything he said could be used against him.

At the hearing, the Commonwealth presented the testimony of a psychiatrist who was employed as an outside consultant by the prison. A written report of another psychiatrist—not present at the hearing—employed as a consultant by the prison was produced as were other written records submitted by the records officer of the prison. The public defender presented no testimony on Souder's behalf.

At the conclusion of the testimony, which lasted twenty-seven minutes from the time the public defender entered the courtroom, the following ensued:

COUNSEL FOR THE PROSECUTION: "Your Honor, that concludes our case except that Dr. Herbert C. Thomas in accordance with his duties under the Act will file his report, but for some reason he could not be here and, in fact, they were about to ask for a postponement."

BY THE COURT: "We will consider Dr. Thomas' report, but in the meantime, we will sign the order granting the Petition and have the proper authorities arrange for the transfer of Kenneth Souder from the State Correctional Institution at Pittsburgh to the Farview State Hospital for inpatient care and treatment."

The provisions of Section 408(b) referred to provide:

"(b) To assist in determining the questions raised by the petition the court may adopt one or any combination of the following procedures:

"(1) Appoint two or more physicians to examine the person in the detaining institution and make a report as to whether he is mentally disabled and whether his commitment is necessary.

"(2) Appoint a commission consisting of two physicians and an attorney which shall examine such person in the detaining institution and in addition, receive any other evidence from any source bearing upon the questions of whether the person is mentally disabled and whether his commitment is necessary.

"(3) Appoint an attorney to represent such person with reference to the petition.

"(4) Hold a hearing which may be public or private. Appropriate notice thereof shall be given to all interested parties including the attorney for the Commonwealth. The presence of the person whose commitment is sought, may be compelled."

Immediately after the hearing Souder was transferred to Farview and into the custody of Michael McGuire, M.D., Acting Superintendent of that institution.

Petitioner filed a habeas corpus petition in the Supreme Court of Pennsylvania which was denied. On April 10, 1974, he filed a pro se petition for habeas relief with the District Court for the Middle District of Pennsylvania. The district court denied petitioner leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a).[2] On appeal, the order denying leave to proceed in forma pauperis was reversed and the case remanded. *Souder v. McGuire,* 516 F.2d 820 (3d Cir.1975).

On September 26, 1975, the Luzerne County Court of Common Pleas ordered Souder's release from Farview and he was transferred back to the State Correctional Institution at Pittsburgh.[3] At an unspecified time, the former respondent in this case, Michael McGuire, was succeeded by the present respondent, Ulysses Watson, M.D., Acting Superintendent of the Farview institution.

By way of relief, petitioner asks that § 411 be declared unconstitutional on its face and as applied to him. Expungement from his files of all references to this commitment is also prayed for.

■ The parties to this action agree, and the court concurs, that the three-judge court requirements dictated by 28 U.S.C. § 2281 are inapplicable to the present proceeding, as only declaratory relief is sought. *Redfearn v. Delaware Republican State Committee,* 502 F.2d 1123 (3d Cir.1974); *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963). Further, § 2281 has no relation to habeas corpus proceedings. *United States ex rel. Shaban v. Essen,* 386 F.Supp. 1042 (E.D.N. Y.1974), and cases cited therein.

Before turning to the constitutional issues presented by this case, we first address respondent's assertion that petitioner has failed to exhaust available state remedies.

It is beyond dispute that a state prisoner seeking federal habeas relief must normally exhaust available state remedies. *Pitchess v. Davis,* 421 U.S. 482, 95 S.Ct. 1748, 44 L.Ed.2d 317 (1975); *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 512, 30 L.Ed.2d 438, 443 (1971). This principle is embodied within the applicable federal habeas corpus statute at 28 U.S.C.A. § 2254. A precise delineation of the exhaustion of state remedies doctrine has not and perhaps should not be drawn. However, in *Braden v. 30th Judicial Circuit Court of Kentucky,* 410 U.S. 484, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973), the Court observed that:

> "The exhaustion doctrine is a judicially crafted instrument which reflects a careful balance between important interests of federalism and the need to preserve the writ of habeas corpus as a 'swift and imperative remedy in all cases of illegal restraint or confinement.' *Secretary of State For Home Affairs v. O'Brien,* (1923) A.C. 603, 609 (H.L.). It cannot be used as a blunderbuss to shatter the attempt at litigation of constitutional claims without regard to the purposes that underlie the doctrine and that called it into existence." 410 U.S., at 490, 93 S.Ct., at 1127, 35 L.Ed.2d, at 449.

Respondent asserts that Souder's petition to the Supreme Court of Pennsylvania did not fairly present the federal constitutional claims now raised in this court. Mindful of the liberal construction accorded pro se complaints, *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), we have reviewed the petition submitted by Souder to the state courts and we conclude that it

---

2. The considerations underlying the district court's action are set forth in *United States ex rel. Irons v. Commonwealth of Pennsylvania,* 407 F.Supp. 746 (M.D.Pa.,1976).

3. Respondent does not contend that petitioner's release from Farview during the pendency of this proceeding renders this case moot. Such a contention would appear untenable in light of

fairly presented the constitutional issues now pressed in this court.[4]

■ Equally applicable to the fact situation before the court is the holding in *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) that the exhaustion requirement refers only to a failure to exhaust state remedies still open to the applicant at the time he files his habeas corpus application in the federal court. *See also, Humphrey v. Cady,* 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972). Petitioner contends, and respondent does not dispute, that there are presently no avenues of state relief available to petitioner since he is no longer committed at Farview. Nor is there any assertion here that petitioner has deliberately bypassed the orderly procedure of the state courts.

We now turn to the scope of the dispute before us. Understandably, respondent concedes that petitioner's commitment was violative of § 411 and the United States Constitution in that he was not afforded notice of the hearing resulting in his commitment. Based on that concession, respondent maintains that this court need not and should not pass on the constitutionality of § 411 itself. Two grounds are advanced in support of the respondent's argument that the court should limit its consideration to the admittedly unconstitutional application of § 411 to Souder. One is abstention; the other the well-settled rule that federal courts should avoid constitutional issues not

*Carafas v. Lavallee,* 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968).

4. The petition is, as one might expect, disjointed and confusing. However, petitioner adequately articulated the basis for his complaints in the following language:

"The police from Wilkes-Barre, Pennsylvania seized, transported and incarcerated [petitioner] at the Farview State Hospital, Waymart, Pennsylvania as a mentally ill person or insane person.

"[Souder] was denied the opportunity to defend himself in a court of law. [Souder] was never present in a court of law for this matter. Pennsylvania government and officials make their actions in this matter legal under Pennsylvania law on Mental Health and Mental Retardation Act of 1966 . . . ."

necessary to the decision of the case before them.

■ We need not abstain in this case as there are no pending state actions questioning the constitutionality of § 411, *see, Dixon v. Attorney General of the Commonwealth of Pennsylvania,* 325 F.Supp. 966 (M.D.Pa.) (3-judge court), nor does it appear that petitioner could now institute a state court action challenging his commitment pursuant to § 411. A second consideration in deciding the propriety of abstention involves examination of the state statute under attack. "Though never interpreted by a state court, if a state statute is not fairly subject to an interpretation which will avoid or modify the federal constitutional question, it is the duty of a federal court to decide the federal question when presented with it." *United States v. Livingston,* 179 F.Supp. 9, 12–13 (E.D.S.C.1959), *aff'd,* 364 U.S. 281, 80 S.Ct. 1611, 4 L.Ed.2d 1719 (1960), quoted with approval in *Zwicker v. Koota,* 389 U.S. 241, 250, 88 S.Ct. 391, 397, 19 L.Ed.2d 444, 451 (1967). Respondent urges that in construing § 411, which by its terms provides a kind of permissive due process, the court could construe the due process alternatives as mandatory rather than discretionary, thereby curing the facial unconstitutional infirmities of the statute. Although we recognize that statutes should be construed so as to uphold their constitutionality, we conclude that without substantially rewriting § 411, a constitutional construction of it is impossible.[5]

The petition then compares Souder's treatment to a bill of attainder.

Under a paragraph styled "Relief Sought," Souder requests "just compensation for not receiving due process according to the United States Constitution. . . ."

5. In this connection, respondent points out that as a rule of statutory construction, the word "may" will be construed as "shall" or "must" when the statute can thereby be upheld. *See, Fisher's Petition,* 344 Pa. 96, 99, 23 A.2d 878 (1942); 82 C.J.S. Statutes § 380, at 881. Inserting "shall" or "must" in lieu of "may" in § 411 and § 408, to which § 411 refers, does not necessarily result in a constitutional construction as the prefatory phrase "one or any combination of the following procedures" is unaffected. Were that phrase deleted then the four

As to the second ground advanced by respondent, we do not agree that the concession that § 411 as applied to petitioner was unconstitutional limits this court's inquiry to that issue alone. Surely the fact that Souder did not receive notice of his commitment hearing renders his commitment unconstitutional. But, acknowledgement of one infirmity in a proceeding where others might also be extant does not, in our view, necessarily restrict this court's examination to the issue selected and conceded by respondent.

We do not view respondent's concession as rendering avoidable a decision on the integral constitutional issues pressed by the petitioner.

We now proceed to the merits of petitioner's two-pronged challenge to the constitutionality of § 411. Having reached this juncture, there is no need for an extended discussion as we find that petitioner's commitment pursuant to § 411 was a denial of equal protection. Our conclusion is primarily premised on the holdings of *Baxstrom v. Herold,* 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966), and *Dixon v. Attorney General of the Commonwealth of Pennsylvania, supra.*

In *Baxstrom,* the Supreme Court struck down § 384 of New York's Correctional Law which set forth commitment procedures for prisoners whom the state desired to keep institutionalized upon the expiration of their prison sentences. Utilizing an equal protection analysis, the Court held § 384 unconstitutional in three respects: 1) because all persons other than those, like Baxstrom, nearing the expiration of a penal sentence are afforded a jury trial on the question of sanity, 2) because all persons other than those situated like Baxstrom are entitled to a judicial determination that they are dangerously mentally ill before being committed to a Department of Cor-

rections institution, and 3) because the decision to commit persons like Baxstrom to a Department of Corrections hospital rather than a civil hospital was vested solely in the hands of administrative officials, whereas, all other civil commitments required a judicial determination of the propriety of commitment to a civil hospital rather than a Department of Corrections institution. In our judgment, *Baxstrom* holds that a distinction in the procedures to be followed in determining an individual's mental health should not be predicated on whether the person is a prisoner or a civilian. As the Court stated, "There is no conceivable basis for distinguishing the commitment of a person who is nearing the end of a penal term from all other civil commitments." *Baxstrom, supra,* at 111–12, 86 S.Ct. at 763, 15 L.Ed.2d at 624. An individual's criminal record could conceivably be relevant to the determination that he is mentally ill, but in making the determination itself procedural disparities denying safeguards to prisoners are not justified. *See Humphrey v. Cady, supra; United States ex rel. Schuster v. Herold,* 410 F.2d 1071, 1081 (2d Cir.1969), *cert. denied,* 396 U.S. 847, 90 S.Ct. 81, 24 L.Ed.2d 96 (1969).

The order entered in *Dixon v. Attorney General, supra,* represents a consent agreement between the parties to that action. There the court found § 404 of the Pennsylvania Mental Health and Mental Retardation Act, 50 P.S. § 4404, violative of the plaintiff's due process rights. The plaintiff in *Dixon* had been committed pursuant to § 404 which sets forth a procedure to be used in involuntary civil commitments. The court had little trouble in finding § 404 to be almost devoid of the due process of law required by the fourteenth amendment. In the consent decree, the defendants in *Dixon* agreed to cease and desist from obtaining commitments under § 404. More

procedures listed under subsection (b) of § 408 would be mandatory, which would unduly complicate a commitment proceeding with duplicative requirements. The interpretation urged upon us by the respondent would not, in our view, result in a reasonable construction of

§ 411 or § 408. *See, Bell v. Wayne County General Hospital at Eloise,* 384 F.Supp. 1085, 1092 (E.D.Mich.1974). *But compare Matthews v. Hardy,* 137 U.S.App.D.C. 39, 420 F.2d 607 (1969).

significantly however, they also agreed to provide due process of law to persons facing involuntary civil commitments, to include, *inter alia,* a right to appointed counsel if the individual is unable to afford retained counsel; an independent expert examination, through court appointment if necessary; and a full hearing, including the right to present evidence on his behalf, subpoena witnesses and documents, and confront and cross-examine witnesses against him.

The evident disparities between the existing procedures used to involuntarily commit civilians[6] vis a vis prisoners, considered in conjunction with the holding of *Baxstrom* compels our conclusion that Souder was denied equal protection of the law.

■ Equal protection does not require that all persons be dealt with identically. In this regard, we adopt the following language found in *Chesney v. Adams,* 377 F.Supp. 887, 893 (D.Conn.1974), *aff'd* 508 F.2d 836 (2 Cir.1975):

"While prisoners and non-prisoners need not be treated *identically,* the procedural distinctions must have some relevance to the purpose for which the classi-

fication is made . . .. (citations omitted)" (Emphasis in original)

We find no justification for the disparate procedures applicable to prisoners pursuant to § 411 as compared to those applicable to nonprisoners under 50 P.S. § 4406 and *Dixon, supra.*

The question of whether § 411 is constitutionally deficient on due process grounds need not be reached in this case as our conclusion on the equal protection issue necessarily encompasses substantially the same due process procedural safeguards dictated by § 4406 and *Dixon, supra.*

■ As discussed above, we find that Souder's commitment pursuant to § 411 violated his right to equal protection of the law. An appropriate judgment declaring § 411 unconstitutional will be entered.

Another aspect of the relief sought by Souder is the expungement of all hospital and other records compiled during the period of his commitment at Farview. Petitioner's demand has been tempered somewhat by his recognition that portions of those records may be relevant to a pending civil rights action filed by Souder.[7]

**6.** We do not consider significant the fact that § 404 has not been repealed. The law of Pennsylvania, insofar as involuntary civil commitments are concerned, is embodied in *Dixon, supra,* by consent of the state and in 50 P.S. § 4406 which provides, in part, as follows:

"Civil court commitment

"(a) Whenever a person is believed to be mentally disabled, and in need of care or treatment by reason of such mental disability, and examination of such person has been made by a physician or physicians, or for any reason the examination of such person cannot be made, a petition may be presented to the court of common pleas of the county in which a person resides or is, for his immediate examination or commitment to an appropriate facility for examination, observation and diagnosis.

"(1) The petition may be made by a relative, guardian, friend, individual standing in loco parentis or by the executive officer or an authorized agent of a governmental or recognized nonprofit health and welfare organization or agency or any responsible person.

"(2) The petition shall set forth the facts upon which the petitioner bases his belief of mental disability and the efforts made to secure examination of the person by a physician.

"(3) Said court upon consideration of such petition shall: (i) issue a warrant requiring that such person be brought before said court; (ii) fix a date for a hearing which shall be as soon as the warrant is executed, and (iii) notify the parties in interest.

"(4) After hearing, said court may: (i) order an immediate examination by two physicians appointed by said court, or (ii) order the commitment of the person believed to be mentally disabled, to a facility for a period not exceeding ten days for the purpose of examination. If the examination can be accomplished by partial hospitalization said court may so direct.

"(b) If, upon examination, it is determined that such person is in need of care at a facility, the examining physicians or director, as the case may be, shall immediately report to said court which may order the commitment of such person for care and treatment."

**7.** In Civil Action 74–590, Souder alleges, *inter alia,* that he was subject to the forced administration of medication during his confinement at Farview. Damages and injunctive relief are requested. A motion to dismiss the complaint has been filed.

718

The respondent vigorously opposes expungement because 1) the hospital records accumulated during Souder's three-year stay at Farview may be necessary for future treatment of petitioner should he be legally committed or voluntarily seek treatment, and 2) there is no injury to Souder by the continued maintenance of his hospital records, especially in light of 50 P.S. § 4602,[8] which limits the availability of such records. The propriety of expungement is further complicated by the recent decision in *Wolfe v. Beal,* Pa.Cmwlth., 353 A.2d 481, 1976, holding that the destruction of statutorily mandated state mental hospital records of a citizen unconstitutionally committed is not within the court's authority.

We hesitate to reach this question without availing counsel of the opportunity to more fully express their thoughts on the matter. Furthermore, assuming expungement is warranted, we are unaware of the contents of Souder's hospital records, and therefore we are in no position to frame an expungement order which would assure the availability of those records relevant to the pending civil suit. Accordingly, a decision on Souder's request for expungement will be held in abeyance pending further briefing and the arguments of counsel.

---

8. 50 P.S. § 4602(d) provides:

"Records of persons admitted or committed

"(d) Any record, or portion thereof, so maintained shall be open to inspection and examination only to those persons designated by the director of a facility at which such person has been admitted or committed or at which he is receiving services or benefits, and as to those facilities under the control of the Commonwealth of Pennsylvania or local authorities to such other persons as the secretary by regulation may determine."